No. 33,865

H. C. KIPP, *Appellant,* v. H. W. CARLSON and L. M. DILLON, *Appellees.*

(84 P. 2d 899)

658

R. F. Crick, M. C. Bucklin, both of Pratt, C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson and Paul R. Kitch, all of Wichita, for the appellant.

A. M. Ebright, P. K. Smith, Bernard Peterson, Richard A. Hickey, all of Wichita, and Alfred Williams, of Pratt, for appellee H. W. Carlson.

The opinion of the court was delivered by

ALLEN, J.: This was an action to recover the value of wheat deposited by plaintiff in defendant's elevator. The jury returned a verdict in favor of the plaintiff. The court sustained defendant Carlson's motion for judgment notwithstanding the general verdict. Plaintiff appeals.

The controversy hinges on whether the petition states a cause of action upon an implied contract for the value of the wheat or in tort for the conversion thereof.

The amended petition alleges:

"1. That plaintiff is a farmer, a resident of Pratt county, Kansas, and his post-office address is St. John, Kan.; that the defendant H. W. Carlson was during the years of 1931 and 1932 engaged in business at Iuka, Pratt county, Kansas, under the trade name and style of H. W. Carlson Grain Company, and was engaged in the business of buying and selling wheat and other grains; that the defendant L. M. Dillon was employed by the said H. W. Carlson during the years 1931 and 1932 in connection with the grain business at Iuka, Kan., under circumstances that are more particularly set out in the next succeeding paragraph.

"2. That previous to about the month of June, 1931, for several years the said H. W. Carlson had been engaged in the grain business at Iuka, Kan., and operating a grain elevator, and the said defendant L. M. Dillon was employed to assist in the work of buying, selling and handling grain generally in and about said elevator and the office connected therewith.

"3. That sometime previous to June, 1931, the exact date of which is unknown to plaintiff, the defendant H. W. Carlson secured employment in Wichita, Kan., with a firm, company or corporation engaged in buying and selling grains, and was thus absent from Pratt county and could not give his personal attention and all of his time to the handling of grain at Iuka as hereinbefore set out; that he thereupon authorized, permitted and directed his employee, L. M. Dillon, to operate said grain business and elevator at Iuka, Kan., and at all times hereinafter set out, until about the 5th day of June, 1932, the said L. M. Dillon was in active charge of said grain business at Iuka, Kan., as the employee of the said H. W. Carlson, and in connection with such employment obtained and had full knowledge and information concerning the transactions hereinafter set out.

"4. That the defendant H. W. Carlson while operating said grain elevator and grain business at Iuka, Kan., as hereinbefore stated, by and with the active assistance of the said L. M. Dillon, held out to the farmers in the vicinity of Iuka that he would receive and store wheat for farmers in the vicinity of Iuka who desired to have their wheat stored, to be redelivered to them at any future time when they should elect to have the same returned to them or sold on their behalf and for their account.

"5. That during the year 1932 the plaintiff and one——— Russell delivered to the defendant H. W. Carlson, at his grain elevator in Iuka, Kan., for storage, wheat on the dates and in amounts and grades as hereinafter set out, to wit:

| Ticket No. | Date Mo. Day | | Test |
|---|---|---|---|
| 1837 | Feb. 27 | 1 truckload containing 69 bu., 30 lbs............... | 60 |

(There are then set out 39 tickets showing the delivery of wheat from February 27, 1932, to June 2, 1932, totaling 3,285 bushels, 20 lbs., all of which tested 60.)

"That on the several dates hereinbefore mentioned, and at the time each truckload of wheat was delivered, a ticket was issued by the said H. W. Carlson, doing business as the H. W. Carlson Grain Company. Attached as exhibit 'A' is a copy of ticket No. 1837; that each of the other tickets representing the several· truckloads of grain hereinbefore mentioned were of the same form as exhibit 'A,' differing only in dates, numbers of bushels, weights, tests and discounts. That all of said tickets indicate that said wheat was received from Russell & Kipp. Plaintiff says that said wheat was grown on the land owned by the plaintiff and occupied by his tenant ——— Russell, under a lease agreement by which each, landlord and tenant, received one-half the crop; that the said——— Russell, tenant, received payment for his one-half of said wheat, to wit, 1,642 bu., 40 lbs., and plaintiff's one-half thereof, to wit, 1,642 bu., 40 lbs., remained in storage and no part thereof has been withdrawn by the plaintiff· or sold or disposed of in any way."

The petition then sets out similar allegations as to other deposits of wheat. It alleges a "demand on the defendant H. W. Carlson for the return of said wheat, or in lieu thereof, for payment to plaintiff of the value thereof, and the defendant refused to redeliver such wheat or to pay for the same."

The petition further alleges:

"6. That at all times when wheat was delivered by the plaintiff to the defendant H. W. Carlson at his elevator in Iuka, Kan., as hereinbefore set out, the defendant L. M. Dillon was in charge of the grain elevator belonging to the defendant H. W. Carlson, and knew that said grain was delivered as aforesaid for the purpose of storage to be held for and on the account of the plaintiff, and notwithstanding the knowledge of the said wheat being thus put in storage for the plaintiff, he actively aided, abetted and assisted the defendant H. W. Carlson in transferring said wheat from the elevator into cars on the Missouri Pacific Railway at Iuka, Kan., and caused said cars thus loaded with plaintiff's wheat to be forwarded by the Missouri Pacific Railway Com-

pany over its lines to destinations unknown by the plaintiff, and the plaintiff does not now know and cannot state what became of his wheat or where it is at the present time.

"That by reason of the above and foregoing things done and acts performed by the two defendants acting jointly and collusively, the defendants have been guilty of converting plaintiff's wheat of the value of $6,253 to their own use and for their own benefit, to the damage of plaintiff in the sum of $6,253.

"Wherefore, plaintiff prays judgment against the defendants in the sum of sixty-two hundred fifty-three dollars ($6,253), with interest, and for all other proper relief and for the costs of this action."

Defendant contends that the plaintiff's petition states a cause of action in tort for conversion, and that plaintiff cannot, after a trial of the issues as framed, shift his hold and recover on the inconsistent theory of an implied contract.

Plaintiff asserts the petition states a good cause of action for conversion or upon an implied contract; that the allegations as to conversion should be considered as surplusage. He claims that as the case was tried upon the theory of implied contract, and it not appearing the defendant was prejudiced in any way in the presentation of his defense, it was error to set aside the verdict.

In *K. P. Rly. Co. v. Kunkel*, 17 Kan. 145, 166, it was said:

"While the distinction between actions on contract and those for tort is plain and broad, yet, . . . it is not always easy to determine from the allegations of the petition in which class the action must be placed; for contracts are often alleged in actions which clearly sound in tort, and as often tortious acts and conduct of the defendant are averred in actions purely *ex contractu*."

In Pomeroy on Code Remedies, 5th ed., section 464, it is stated:

"But when the contract relied upon is implied, and is simply the fictitious promise which the law infers from the tortious acts themselves, it may be doubted whether it is possible, in accordance with the true principles of the reformed pleading, to frame a complaint or petition in all cases which shall show on its face that the plaintiff has elected to bring his action either in tort or on contract. In one class of liabilities it is certainly possible to do so; namely, in those which result from the defendant's fraudulent representations and deceits. The allegation of a *scienter* is indispensable in the action *ex delicto* based upon such a liability, and distinguishes it in a marked manner from the correlative action based upon the implied promises. But when the liability results from the wrongful taking or conversion of chattels, from trespasses, negligences, or other similar kinds of wrongs, the very facts which are alleged in the action of tort are the facts from which the promise is inferred; and, according to the true theory of pleading, these facts must also be stated in the action *ex contractu,* without any legal inferences or conclusions. It

conclusively follows, that in this general class of liabilities, as the facts which constitute the cause of action are the same in each, the averments of the complaint or petition must be the same in each kind of action, if the essential principles of the reformed system are complied with, so that it is impossible to indicate upon the face of the pleading alone the election which the plaintiff has made."

When doubt exists as to whether the action is based on tort or on quasi contract, it has often been held by this court that words appropriate to an action for tort will be disregarded, and the petition will be interpreted as counting on quasi contract. (*Webb v. Crawford County Comm'rs*, 127 Kan. 547, 274 Pac. 249; *Railway Co. v. Hutchings*, 78 Kan. 758, 99 Pac. 230; *State Highway Comm. v. Puskarich*, 148 Kan. 388, 83 P. 2d 131.)

Under the code section G. S. 1935, 60-704, the plaintiff's petition must contain a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition. It cannot be doubted that the petition in this case stated a cause of action in quasi contract for the value of the wheat. We think the allegation in the petition that "acting jointly and collusively, the defendants have been guilty of converting plaintiff's wheat" may be regarded as surplusage. In *Delaney v. Implement Co.*, 79 Kan. 126, 98 Pac. 781, when a similar question was before the court, it was said: "In our opinion the petition stated a cause of action on contract, and the language seeming to indicate the contrary must be regarded as surplusage."

In *McGinn v. Butler*, 31 Ia. 160, plaintiff alleged he deposited wheat with defendant under agreement to return on demand. The petition states that plaintiff demanded the wheat of defendants, but they had, before demand, shipped and sold the same. Appellant contended the action was in tort. The court said:

"We are clear that this action is not *founded on tort*. It is most manifestly an action to recover for the breach of an alleged contract. The gravamen of the action is the failure of the defendants to deliver to the plaintiff on demand the wheat stored by him with the defendants, according to the contract alleged. The allegation of the petition that defendants had shipped and sold the grain, and thereby converted it, is an unnecessary averment. It was but evidence and should not have been stated (Rev., § 2945), and might have been stricken out on motion." (p. 162.)

See, also, 1 C. J. S., 1115, and cases cited, note 44.

An examination of the record discloses that the allegations in the petition were supported by the evidence. The unnecessary words as to conversion of the wheat do not, in our opinion, justify the action

of the court in setting aside the verdict. Neither do we find that the defendant was in any manner prejudiced by the trial of the action on the theory of an implied contract.

It is urged that while the court in Pratt county had jurisdiction over the defendant (a resident of Sedgwick county) in a tort action, it did not have jurisdiction in an action on an implied contract. It is not contended that Carlson entered a special appearance to challenge the jurisdiction of the court. On the contrary, the record discloses that he entered a general appearance and filed divers motions, a demurrer to the petition, an answer, an amended answer, a demurrer to the evidence, a motion for a directed verdict, etc. Defendant objected to the submission of the case to the jury on the ground that the allegations in the petition stated a cause of action for conversion, and that the instructions of the court submitted the case on the theory of an implied contract. As we have seen, the petition stated a cause of action upon an implied contract. The defendant entered a general appearance and submitted to the jurisdiction of the court. In *Bury v. Conklin*, 23 Kan. 460, it was said: "It is a general principle of law, with probably no exception, that where a party voluntarily appears to the merits of any controversy, he thereby waives all irregularities which may have intervened in getting him into court." It is now too late to raise a jurisdictional question.

Reference is made to *Kipp v. Goffe & Carkener*, 144 Kan. 95, 58 P. 2d 102. In that case the controversy was between the depositor of the wheat and the purchaser from the operator of the elevator. In the present case the wheat was delivered to the elevators in the crop year 1931, during which time Dillon was operating the elevators as the agent of Carlson. In the cited case the wheat was delivered during the crop year of 1932, during which time Dillon operated the elevators on his own behalf under a lease from the owner. This action is against Carlson as the operator of the elevators, while the cited case was an action against the purchaser of the wheat. Under the facts in the cited case we found there was a sale and that Kipp was estopped by his conduct. That case rests on its own facts and is not controlling here. (The writer is unable to concur in this paragraph of the opinion.)

The judgment of the court in setting aside the verdict and entering judgment for defendant is reversed and the cause remanded with directions to enter judgment for the plaintiff on the verdict.