No. 41,260

In the Matter of the Estate of Kyle Talbott, Deceased. (PAUL CRABB, d/b/a Crabb Construction Company, *Appellant*, v. MARGARET SWINDLER, JUNE MOSS, RICHARD TALBOTT, and BETTY BURSON, Administrators of the estate of Kyle Talbott, deceased, *Appellees.*)

(337 P. 2d 986)

Opinion filed April 11, 1959.

*Bill Murray,* of Pratt, argued the cause, and *B. V. Hampton,* of Pratt, was with him on the briefs for appellant.

*Richard Barrett,* of Pratt, argued the cause, and *George Barrett,* of Pratt, was with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This was a proceeding against the estate of a deceased plumbing contractor to recover damages alleged to have been sustained by the owner of a new house, resulting from the installation of certain plumbing fixtures in a negligent, careless and unworkmanlike manner and contrary to good plumbing practices.

On July 13, 1956, the petition for allowance of demand was filed in the probate court and was thereafter transferred to the district court pursuant to G. S. 1957 Supp. 59-2402a. The administrators' demurrer to the petition and plea in abatement were sustained, and the claimant has appealed.

The petition alleged that claimant constructed and owned a new dwelling house in Pratt; that Kyle W. Talbott, doing business as K. W. Talbott Plumbing and Heating, contracted to do the plumbing work in the house which work was begun on May 1, 1955; that Kyle W. Talbott died intestate on November 21, 1955, and that defendants are the duly appointed administrators of his estate. Claimant further alleged that the plumbing work contracted for, among other things, involved the installation of lavoratories and entailed the coupling of water faucets on the pipes to the water supply that lead into the bathroom. The petition then alleged:

"This connection was made by a copper supply and was coupled by a slip nut, a rubber ferrule was used under the slip nut to hold the coupling. It is a customary practice in the plumbing business for the copper supply to fit at least ⅛ inch down into the elbow, then to slip the rubber ferrule down on the joint and tighten the slip nut. The left coupling on the lavatory in the Southwest bathroom on the bottom elbow was made negligence, careless, and unworkman like manner, contrary to good plumbing practices for the reason the copper supply was too short to seat into the elbow according to good plumbing practice, and the coupling did not hold. That K. W. Talbott Plumbing and Heating, its agents, servants, and employees, knew or should have known that when rubber ferrules are used, the copper supply must seat into the elbow properly or the coupling would slip and water would flow from the water pipe, and flood the house. Said coupling shortly thereafter did give by reason of the length of the copper supply being too short, and not seating properly into the elbow and said house did flood. That the K. W. Talbott Plumbing and Heating, its agents, servants, and employees, knew or should have known that said copper supply was too short and the coupling could not be properly and

safely made in a workman like manner, but negligently, carelessly and contrary to customary and good plumbing practices, the coupling was joined without the use of a longer copper supply and without the copper supply going into the elbow in a proper manner. K. W. Talbott Plumbing and Heating, its agents, servants, and employees, knew or should have known that this connection was with the water supply and when the coupling gave, water would and did flow freely into the house flooding it."

The petition further alleged that by reason of the poor workmanship and negligence of Talbott, his servants and employees, the coupling was improperly made, causing flooding in the house, which depreciated the market value of the house by $3,283.16. The prayer was that the petition be allowed against the estate in that amount.

The administrators filed a motion to make the petition more definite and certain by stating when Talbott completed the installation of the bathroom fixtures; the date the plumbing fixtures broke and the house was flooded, and the damage which resulted depreciating its market value.

The motion was overruled with the understanding that claimant would interline in his petition the date when he first discovered flooding and would furnish the administrators the items of damage alleged to have been sustained. The actual date of flooding was not inserted, but claimant interlined the petition to show that it was discovered in January, 1956, and that the left coupling on the lavatory in the southwest bathroom did not hold. A bill of particulars was furnished itemizing the damages alleged to have been sustained.

When the motion to make definite and certain was argued before the district court on October 4, 1956, claimant's attorney declared:

". . . This whole case, your Honor, is based upon one thing: was the defendant negligent in the construction and coupling of the pipes involved herein?"

The administrators answered, admitting the contract between claimant and decedent; and alleged that claimant was guilty of contributory negligence which was the proximate cause of the damage claimed, and that the petition showed on its face the action did not accrue during the lifetime of Kyle W. Talbott and therefore the action had abated and no cause of action existed against the decedent's estate. The administrators demurred to the petition on the ground that it failed to state a cause of action against the estate of Kyle W. Talbott.

The trial court sustained the plea in abatement and the demurrer upon the ground that claimant's petition sounded in tort; that since

no damage had accrued at the time of Talbott's death, claimant had no cause of action against Talbott in his lifetime under the rule announced in *Kitchener v. Williams,* 171 Kan. 540, 236 P. 2d 64, and, therefore, no cause of action survived against the decedent's estate under G. S. 1949, 60-3201.

Did a cause of action survive against the estate of the decedent? The answer to the question requires a determination whether a cause of action accrued against the decedent in his lifetime. If it did not, then, under G. S. 1949, 60-3201, no cause of action survived against his estate. The administrators contend that, since the claimant elected to proceed in tort, under *Kitchener v. Williams,* supra, no cause of action accrued until January, 1956, when the flooding occurred, which was subsequent to the decedent's death, hence, no cause of action survived. On the other hand, claimant asserts that his cause of action is in contract for breach of an implied warranty to install the plumbing fixtures in a reasonably skillful and workmanlike manner, and that when the warranty was breached by the faulty installation during the decedent's lifetime, a cause of action accrued which survived against his estate.

While good practices require the plaintiff's initial pleading to proceed on a single and definite theory, under modern code systems, his pleading may be held sufficient if it states a cause of action on any theory. ( *Cockrell v. Henderson,* 81 Kan. 335, 105 Pac. 443; *Nichols v. Nold,* 174 Kan. 613, 629, 258 P. 2d 317, 38 A. L. R. 2d 887; 71 C. J. S., Pleading, § 92, p. 227, citing many cases including *Grannell v. Wakefield,* 169 Kan. 183, 217 P. 2d 1059; *Sinclair Prairie Oil Co. v. Worcester,* 163 Kan. 540, 183 P. 2d 947; *Dellinger v. Harper County Social Welfare Board,* 155 Kan. 207, 124 P. 2d 513, and *Lofland v. Croman,* 152 Kan. 312, 103 P. 2d 772.)

It is clear that if claimant has elected to proceed in tort, a cause of action did not survive against the decedent's estate. In *Kitchener v. Williams,* supra, we dealt extensively with the question of when a cause of action in tort accrues. It was there held that not every failure to exercise due care gives rise to a cause of action; for negligence to be actionable, a damage to the plaintiff must have resulted from the wrongful conduct of the defendant, and that a cause of action in tort does not accrue until actual damage has resulted from the alleged negligence. Applying this rule to the pleaded facts, the claimant did not sustain damage until January, 1956, following the death of the decedent, and a cause of action in tort for the negligent

installation of the plumbing fixtures did not accrue in the lifetime of the decedent, which survived against his estate.

Do the allegations of the petition state a breach of a contractual duty giving rise to a cause of action during the lifetime of the decedent? We think they do. The relationship of the parties was created by their contract. In such a situation, it is generally recognized that when a party binds himself by contract to do a work or perform a service, in the absence of express agreement, there is an implied agreement or warranty, which the law annexes to the contract, that he will do a workmanlike job and will use reasonable and appropriate care and skill (*Kuitems v. Covell,* 104 Cal. App. 2d 482, 231 P. 2d 552; *R. Krevolin & Co., Inc., v. Brown,* 20 N. J. Super. 85, 88, 89 A. 2d 255; *Bellman Heating Co. v. Holland,* 86 A. 2d 526; *Brush v. Miller* (Mo. App.), 208 S. W. 2d 816; *Gore v. Sindelar* (Ohio App.), 74 N. E. 2d 414; *George v. Goldman,* 333 Mass. 496, 131 N. E. 2d 772; 17 C. J. S., Contracts, § 329, p. 781; 38 Am. Jur., Negligence, § 20, p. 662).

Thus, when the decedent contracted with the claimant in May, 1955, to install the plumbing fixtures there was an implied warranty that it would be done with reasonable and appropriate care and skill and in conformity with good plumbing practices. A breach of that warranty occurred, according to the allegations of the petition, when the decedent installed the bathroom plumbing fixtures in a negligent, careless and unworkmanlike manner by reason of the fact that the copper supply was too short to seat properly into the elbow so that the coupling did not hold, but leaked water and flooded the house. A breach of an implied warranty to use reasonable and appropriate care and skill, that is, to do a workmanlike job, usually results from the negligence or failure to use due care and skill in performing the particular work (*Nichols v. Nold,* supra, 38 A. L. R. 2d 887.) Hence, the tortious or negligent acts alleged may be considered as allegations of the breach of the implied warranty. In *K. P. Rly. Co. v. Kunkel,* 17 Kan. 145, Mr. Justice Brewer said:

". . . A second position of counsel is, that the cause of action is not one arising from contract, but is founded upon tort, and that therefore it was barred any way, even if August instead of March was the time of the injury. This claim cannot be sustained. While the distinction between actions on contract and those for tort is plain and broad, yet, as is well said in the case of *Staley v. Jameson,* 46 Ind. 159, on which counsel mainly rely, and in which is quite a full discussion of the question, it is not always easy to determine

from the allegations of the petition in which class the action must be placed; for contracts are often alleged in actions which clearly sound in tort, and as often tortious acts and conduct of the defendant are averred in actions purely *ex contractu*. And often the plaintiff has his election upon the same state of facts, whether to bring an action *ex contractu*, or one *ex delicto*. Here the pleader alleges that the defendant was a common carrier, that it made a certain contract of carriage, and received its pay therefor, and then alleges that defendant broke said contract, and how it broke it. *True, in showing how defendant broke the contract it discloses wrongful acts done by defendant; but still the manifest gist of the action is the breach of the contract, and the tortious acts are simply the manner of the breach. . . ."* (l. c. 166.) (Emphasis supplied.)

In *Provident Loan Trust Co. v. Wolcott,* 5 Kan. App. 473, 47 Pac. 8, the action was against a bonded abstractor who, it was alleged, compiled an abstract upon certain lands in which plaintiff was damaged by reason of "incompleteness, error and imperfection of said abstract." In the opinion it was said:

". . . The petition sets forth a contract for services which were to be rendered with care. It states that they were not carefully done, but, on the contrary, were incompletely, imperfectly and erroneously performed—*in other words, carelessly and negligently performed*—and that in consequence thereof, the plaintiff was damaged. The carelessness and negligence of the officer was the sole cause of the injury. Now, what would be the legitimate order of proof under this petition? We think, *first,* the contract; *second,* the breach; and, *third,* the damage. If the contract had been in writing, then the limitation would have been five years; if not, it would be three. *Howard v. Ritchie,* 9 Kan. 102." (l. c. 476, 477.) (Emphasis supplied.)

In Pomeroy on Code Remedies, 5th ed., § 464, it is said:

"But when the contract relied upon is implied, and is simply the fictitious promise which the law infers from the tortious acts themselves, it may be doubted whether it is possible, in accordance with the true principles of the reformed pleading, to frame a complaint or petition in all cases which shall show on its face that the plaintiff has elected to bring his action either in tort or on contract. In one class of liabilities it is certainly possible to do so; namely, in those which result from the defendant's fraudulent representations and deceits. The allegation of a *scienter* is indispensable in the action *ex delicto* based upon such a liability, and distinguishes it in a marked manner from the correlative action based upon the implied promises. But when the liability results from the wrongful taking or conversion of chattels, from trespasses, negligences, or other similar kinds of wrongs, the very facts which are alleged in the action of tort are the facts from which the promise is inferred; and, according to the true theory of pleading, these facts must also be stated in the action *ex contractu*, without any legal inferences or conclusions. It conclusively follows, that in this general class of liabilities, as the facts which constitute the cause of action are the same in each, the averments of the complaint or petition must be the same in each kind of action, if the essential principles

of the reformed system are complied with, so that it is impossible to indicate upon the face of the pleading alone the election which the plaintiff has made."

The nature of the cause of action must be determined from the pleadings (*Dougherty v. Norlin*, 147 Kan. 565, 569, 78 P. 2d 65, and cases cited). In construing a pleading, it has often been held by this court that where doubt exists as to whether the action is based on tort or on quasi or implied contract, words appropriate to an action for tort will be disregarded and the petition will be interpreted as counting in contract. (*Kipp v. Carlson*, 148 Kan. 657, 661, 84 P. 2d 899; *Dougherty v. Norlin*, supra, p. 569, and cases cited.) See, also, *Challis v. Hartloff*, 136 Kan. 823, 18 P. 2d 199. When the allegations of the petition, including all inferences to which they are entitled, are fairly considered, we think they state a cause of action for breach of implied warranty that the work contracted for would be done in a careful and workmanlike manner and in accordance with good plumbing practices. Claimant was not required to expressly allege an implied warranty since the law annexes it to the contract pleaded, and the facts alleged show a breach thereof. Nor do we think counsel's statement to the effect that the case was based on whether or not the decedent was "negligent" may be considered as an admission or binding election upon claimant to proceed in tort. That statement was not inconsistent with the allegations of a breach of an implied warranty. As we have seen, the tortious acts alleged: that the work was done negligently, carelessly, improperly and contrary to good plumbing practices, are allegations of the manner of the breach of the implied warranty which was the sole cause of the injury.

When did the cause of action for the alleged breach of the implied warranty accrue? Although it is not alleged when the contract was completed, the record indicates the installation was completed during the decedent's lifetime. Where there is a contractual relationship between the parties, the plaintiff's cause of action accrues when the contract or agreement is breached. (*Regier v. Amerada Petroleum Corp.*, 139 Kan. 177, 181, 182, 30 P. 2d 136; *Dougherty v. Norlin*, supra; *Rex v. Warner*, 183 Kan. 763, 769, 770, 332 P. 2d 572.) See, also, *Rucker v. Hagar, et al.*, 117 Kan. 76, 230 Pac. 70.

In 1 Am. Jur., Actions, § 62, p. 453, the rule is stated as follows:

"A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury it has occasioned him. . . ."

Since it is the breach of a contractual duty—here, an implied warranty—which gives rise to the cause of action, claimant could have proceeded immediately following that breach whether or not actual damage had resulted, and would have been entitled to recover nominal damages, if nothing more (12 Am. Jur., Contracts, § 388, p. 965; 25 C. J. S., Damages, § 9, p. 466, 467). However, if he sustains actual damage, such as is here alleged, the measure of damage is such as are the natural, direct and proximate result of the breach (*Challis v. Hartloff*, supra; *Moffet v. Kansas City Fire & Marine Ins. Co.*, 173 Kan. 52, 244 P. 2d 228; *Billups v. American Surety Co.*, 173 Kan. 646, 649, 251 P. 2d 237; 25 C. J. S., Damages, § 24, p. 481-483).

Summarizing what has been heretofore discussed, we conclude that the allegations of claimant's petition state a cause of action for a breach of a contractual duty, that is, the breach of an implied warranty to use reasonable and appropriate care and skill, or to do a workmanlike job; that the cause of action for that breach accrued when the alleged faulty installation was completed, and that the claimant may recover damages therefor which are the natural, direct and proximate result of the breach.

In view of the foregoing, the district court erred in sustaining the plea in abatement and the demurrer to claimant's petition, and that order is reversed.

It is so ordered.

PRICE, J., dissents.