No. 42,058

Greston T. McCoy, Administrator of the Estate of Roy W. McCoy, *Appellant*, v. Wesley Hospital and Nurse Training School, *Appellee*.

(362 P. 2d 841)

Opinion filed June 10, 1961.

*Payne H. Ratner, Jr.,* of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Cliff W. Ratner, Edmund R. Learned, James R. Barr, Frank W. Hylton* and *R. R. Barnes,* all of Wichita, and *David W. Kester,* of Eureka, were with him on the briefs for the appellant.

*William Tinker,* of Wichita, argued the cause, and *Arthur W. Skaer, Hugh P. Quinn, William Porter, Alvin D. Herrington, Darrell D. Kellogg* and *Richard T. Foster,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to recover damages for personal injuries received by a patient, Roy W. McCoy, while in the defendant hospital where he was permitted to fall from a bed on February 18, 1956, while under the influence of sedation and anesthetics.

Subsequent to the patient's death on the 20th day of January, 1959, the action was revived in the name of the administrator of his estate, Greston T. McCoy, who filed a second amended petition. The theory of the plaintiff's action was framed in two counts, one in tort and the other, in the alternative, in contract. The trial court sustained a demurrer to both counts of the second amended petition on the ground that the action was barred by the statute of limitations.

The foregoing decision of the trial court on the admitted facts presented gives rise to various questions.

While the appellee contends a demurrer to a pleading searches the record and is applied to the first defective pleading (*Marks v. St. Francis Hospital & School of Nursing*, 179 Kan. 268, 294 P. 2d 258), it has no application here because we construe the second amended petition to be merely an enlargement and amplification of the averments of the original petition. (*Sundgren v. Topeka Transportation Co.*, 178 Kan. 83, 283 P. 2d 444, and cases cited therein.)

For purposes of our decision, therefore, the action was instituted on May 6, 1958, when the original petition was filed, since the allegations of the second amended petition relate back to that date.

The second amended petition alleges that on February 16, 1956, Roy W. McCoy (hereafter referred to as the decedent) was admitted to the Wesley Hospital and Nurse Training School in Wichita, Kansas, (hereafter referred to as the hospital or appellee) where on February 18, 1956, he underwent an operation for the removal of his prostate gland. Immediately following this surgery the decedent was returned to his room in an unconscious condition, being under the influence of sedation and anesthetics, and while in this condition, fell from the bed upon which he was placed. As a result thereof, he suffered a broken hip causing him to sustain severe and lasting disability, for which injury and damage suit is brought.

Appropriate allegations are set forth in the second amended petition defining the duty of the hospital and describing the specific acts of negligence with which it is charged. It then alleged:

"VII.

"When decedent fell from the bed, as aforesaid, he was so under the influence of sedation and anaesthetics that he was unaware of the fall. Decedent was, by the agents, servants and employees of defendant, placed back in his bed and was thereafter examined by the agents, servants and employees of said defendant. Said examination was cursory in character and took place immediately after decedent's fall. Because of decedent's semi-conscious state he did not recognize the agents, servants and employees of defendant who placed him back in his bed. Decedent alleges, however, on information and belief, that a Mrs. Johnson, the head nurse, on duty at the time aforesaid, and a licensed practical nurse, whose name decedent does not know, placed him back in his bed. Plaintiff further alleges that defendant's own records, which are not available to plaintiff of revivor disclose or should disclose to defendant the names of the agents, servants and employees who placed plaintiff back in his bed and examined him thereafter. *At no time was the physician who was caring for decedent informed by defendant of said fall nor was decedent so informed.*

Decedent was not examined by defendant for a broken hip, or if such examination was made, it was a simple, cursory examination, negligently made so as not to disclose said broken hip. Notwithstanding that defendant knew that an elderly person was likely to break a hip in a fall such as decedent suffered, and notwithstanding defendant owed a duty to examine decedent to determine the exact nature and extent of his injuries, defendant did not examine decedent by x-ray or other proper means to determine if decedent had any broken bones. *Defendant owed a duty to inform decedent and decedent's treating physician, of decedent's fall, but failed, neglected and refused to do so, at all times concealing the fact of said fall.*

## "VIII.

*"By reason of defendant's concealing said fall as aforesaid, decedent's injury was unknown to him and to his treating physician and neither had any suspicion or knowledge that decedent had fallen from bed* and that he might have been injured or was injured as a result thereof. Decedent's treating physician was Vern L. Pauley, M. D. Decedent exercised reasonable diligence in attempting to ascertain the cause of his disability by complaining to the agents, servants and employees of defendant, of pain in his hip. He was assured that it was caused by phlebitis and was at no time informed of any fall or injury to his hip. Decedent does not know the names of the agents, servants and employees who were on duty at the time he made complaints. Decedent, however, alleges that it was several days after his fall before he made complaints because he was during that period of time under heavy sedation. When decedent recovered his consciousness, several days after the fall, he complained constantly to all hospital personnel whom he could contact. Decedent alleges that defendant's own records disclose the names of those agents, servants and employees who were on duty and who attended plaintiff and to whom these complaints were made. These complaints were verbal in form and no written complaint was made. Defendants, agents and servants in the course of their employment, ignored plaintiff's complaints of pain, and insisted that he follow the usual hospital daily routine for ambulatory patients. This routine consisted of moving decedent about in his bed, walking decedent to the bathroom, placing him under the care of defendant's physical therapists for walking and other muscle exercises, rubbing and manipulating decedent's legs and hips. By reason of such daily manipulation of decedent's fractured hip the bones therein were prevented from forming a proper union. The aforementioned acts of defendant by and through its agents and servants, continued daily up until May 13, 1956, causing decedent intense pain and suffering.

## "IX.

"Decedent post-operative recovery from the prostate removal proceeded and on May 13, 1956, he was released from defendant hospital and went to his home in Eureka, Kansas. *Defendant was under a continuing duty to inform decedent, and decedent's treating physician, of decedent's fall and consequent injury or probability thereof.* Notwithstanding the defendant's continuing duty to do so, *it failed, neglected and refused so to inform and continued to conceal the fact of said fall,* and continued to daily manipulate decedent's legs and hips, causing decedent to suffer injuries and damages herein more specifically alleged.

Decedent, upon returning to his home in Eureka, Kansas, continued to suffer pain in the region of his hip. He contacted a physician in Eureka who examined him, made x-rays, and informed plaintiff that he had a broken hip. Decedent so informed his treating physician, and the treating physician checked with the hospital and determined, from the records thereof, that decedent had suffered the fall complained of herein and decedent's treating physician so informed decedent.

"X.

"As a direct and proximate result of defendant's negligent failure to inform decedent and decedent's attending physician, of the fact of said fall, and defendant's continued concealment of said fact, decedent's injury was not timely diagnosed or treated. As a direct and proximate result thereof said hip healed in an unnatural and improper position, leaving decedent's injured leg approximately one and one-half inch shorter than the other, the hip stiff and the foot turned outward at an approximate angle of forty-five degrees. As a direct and proximate result thereof decedent became permanently disabled and was unable to walk unassisted.

"XI.

"After decedent left the hospital he continued his post-operative recovery at his home in Eureka, Kansas. *On or about June 2, 1956,* after decedent had continued and repeated difficulty walking, he was examined by a local physician, x-rays were taken and *for the first time decedent discovered his broken hip.* At the time of discovery the healing process had proceeded to the point that it was not possible to set decedent's hip properly. As a consequence it has healed as aforesaid.

"XII.

"Decedent, prior to his injuries as aforesaid, was a healthy, active male of the age of 71 years, with a life expectancy of 9.8 years, who was self-employed. As a result of defendant's negligence as aforesaid, decedent has been totally and permanently disabled from gainful employment. Decedent's estate has become liable for the $3,000.00 for medical, hospital and nursing care. Decedent suffered intense pain of body and anguish of mind up until the time of his death all to decedent's damage in the sum of $100,000.00." (Emphasis added.)

The foregoing allegations of the first count, except paragraph numbered XII, were incorporated by reference in the second count, which further alleged that upon the decedent's admission to the defendant hospital he entered into a contract for hospital services, by the terms of which the hospital agreed to furnish the decedent with adequate, safe and proper care and nursing facilities during the decedent's stay at the hospital. A copy of the admission agreement was attached and incorporated by reference, the pertinent part providing:

"In Consideration of the admission and care of above named patient the undersigned hereby agree to pay to the Wesley Hospital at Wichita, Kansas,

the sum as hereinafter provided for room service, and also all obligations incurred for use of operating room, X-ray department, laboratory, and extra services rendered said patient by direction of the attending physician, or representative of the patient."

The second amended petition in count II then alleged:

"I.

. . . . . . . . . . . . . .

"Notwithstanding said agreement defendant failed, refused and neglected to provide adequate, safe and proper care and facilities in that defendant provided no recovery room, attendant or bed rails for decedent's protection after his surgery, as aforesaid, and instead breached its contract with decedent, causing him to fall from his bed on February 18, 1956, and suffer injury as aforesaid.

"II.

"*The contract aforesaid required the defendant hospital, as a part of the care of the decedent for which defendant contracted, inform decedent's physician of any incident or occurrence which might in any way affect decedent's health, well-being or recovery during his stay in the hospital, and that the hospital would exercise due and proper care for the safety and well-being of plaintiff.*

"*Notwithstanding its agreement defendant hospital wholly failed, refused and neglected to inform decedent's physician of decedent's fall as aforesaid, and in fact concealed said fall from decedent and from his physician, causing aggravation of decedent's injury as aforesaid,* and defendant failed, refused and neglected to use due care in the course of decedent's admission and tenure in defendant hospital.

"WHEREFORE, plaintiff prays judgment against defendant in the sum of $100,000.00, plus the costs of this action either on Count I of his cause of action or on Count II." (Emphasis added.)

Appeal has been duly perfected by the administrator of the decedent's estate (hereafter referred to as the appellant) from the adverse ruling of the trial court on the demurrer. Upon the record presented the second amended petition is entitled to a liberal construction.

The appellee's sole contention is that the second amended petition shows on its face the statute of limitations is a complete bar to the cause of action.

Regarding the statute of limitations applicable to count I, G. S. 1949, 60-306, reads in part:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

. . . . . . . . . . . . . .

"*Third. Within two years:* An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions

for the specific recovery of personal property; *an action for injury to the rights of another, not arising on contract,* and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." (Emphasis added.)

The appellant relies upon the doctrine of equitable estoppel *in pais* to prevent a resort to the statute of limitations, citing *Rex v. Warner,* 183 Kan. 763, 332 P. 2d 572, and authorities cited therein at page 771, but concedes to invoke the doctrine the appellee must have done something that amounted to an affirmative inducement to delay bringing the action. While the decedent's fall from bed was concealed, the alleged concealment ceased to operate on the 2nd day of June, 1956, when his fall from bed was discovered. After that date there was ample opportunity to institute an action within the two-year period from the date of the fall. Under these circumstances the doctrine of equitable estoppel is not available to interrupt the running of the statute of limitations.

The appellant contends that concealment of the decedent's fall from bed until the 2nd day of June, 1956, tolled the running of the statute until such date, and that the action which was filed on the 6th day of May, 1958, was therefore within the period of two years.

In an action for relief *on the ground of fraud* the statute of limitations does not start to run until the plaintiff discovers the fraud, or until he learns such facts as would lead a reasonably prudent person to investigate. (*Dalton v. Lawrence National Bank,* 169 Kan. 401, 219 P. 2d 719; and *McWilliams v. Barnes,* 172 Kan. 701, 242, P. 2d 1063.) But the cause of action in count I is on the ground of negligence, the negligence of the hospital in permitting the decedent to fall from his bed, and not on the ground of fraud.

Under the present law of Kansas fraud and concealment toll the running of the statute of limitations only when relief is sought on the ground of fraud. The rule applies only when the party against whom the bar of the statute is interposed is required to allege fraud in pleading his cause of action, or to prove fraud to entitle him to relief. In *State, ex rel., v. McKay,* 140 Kan. 276, 36 P. 2d 327, it was said:

". . . Our statutes do not make concealment one of the grounds for tolling the statute of limitations. Perhaps that should be done, but it is the function of the legislature and not of the courts to do it. (*Railway Co. v. Grain Co.,* 68 Kan. 585, 587, 589, 75 Pac. 1051; *McAllister v. Fair,* 72 Kan.

533, 535, 84 Pac. 112; *Baxter v. Krause,* 79 Kan. 851, 853, 101 Pac. 407; *Caspar v. Lewin,* 82 Kan. 604, 627, 109 Pac. 657.)

"Concealment does not toll the statute of limitations for an action founded on contract (*Railway Co. v. Grain Co.,* supra; *Pickens v. Campbell,* 98 Kan. 518, 522, 159 Pac. 21; *Rucker v. Hagar, et al.,* 117 Kan. 76, 79, 230 Pac. 70), nor for an action founded on liability created by statute (*City of Coffeyville v. Metcalf,* 134 Kan. 361, 5 P. 2d 807) . . ." (p. 280.)

The above rule has been applied in an action for malpractice against a physician, which is a tort, in *Graham v. Updegraph,* 144 Kan. 45, 58 P. 2d 475. There the two-year statute of limitations was held applicable and the physician's concealment of the tort did not toll the running of the statute. It was said the action accrued when the wrongful act was committed rather than when the consequential damages arose.

Harsh as the rule may seem, it has been firmly established in this jurisdiction. The appellant concedes *Graham v. Updegraph,* supra, must be overruled to sustain his position on this point. It is argued the rule is open to question when compared with *Russell v. American Rock Crusher Co.,* 181 Kan. 891, 317 P. 2d 847, and *McWilliams v. Barnes,* supra. An analysis of these cases does not support the appellant.

In the *Russell* case quarrying operations were conducted under the plaintiff's premises for seven years prior to the plaintiff's discovery of the trespass. The action was founded upon the ground of *fraud* and trespass, and it was held the action was brought within two years from the time the fraud and trespass were first discovered. It does not appear from the opinion that the issue of concealment, present in the instant case, was before the court for consideration, the action being within the fraud provision of 60-306, *Third, supra.*

In the *McWilliams* case the action was to recover damages for *misrepresentations* made in connection with a sale of real estate. It was represented to the plaintiffs that the drain pipes in the house situated on the real estate were connected to and emptied into the city's sewer system at the time they entered into the purchase contract. More than two years after the purchase it was discovered the drain pipes were not so connected but drained into a pit on the rear of the property. The court held the plaintiff's cause of action accrued *when they discovered the fraud.*

The situation presented in *Kitchener v. Williams,* 171 Kan. 540, 236 P. 2d 64, is to be distinguished. There an action for damages sustained by the explosion of an automatic hot water heater oc-

curred more than two years after it had been negligently serviced or installed by the defendant, and it was held the plaintiff's cause of action for personal injuries did not accrue until the plaintiff had suffered damages. Therefore, the statute of limitations did not commence to run until the explosion occurred. The decision is founded upon the proposition that actionable negligence does not occur until three essential elements exist: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; and (3) an injury to the plaintiff from such failure of the defendant. It is improbable the legislature intended that the statute of limitations should operate against the accrual of rights of action, rather than merely as a bar to rights of action after accrual. Under these circumstances, the *hazard* created by the negligent conduct was continuous, but the statute of limitations did not commence to run until the damages resulted. (See, *Polzin v. National Cooperative Refinery Ass'n*, 175 Kan. 531, 266 P. 2d 293.)

The appellant contends the hospital, by reason of its relationship of trust and confidence with the decedent, had a duty to disclose the facts concerning his fall, and silence on the part of the hospital's agents and servants constituted a fraudulent concealment of the decedent's cause of action which tolled the statute of limitations.

If the relationship between the decedent and the hospital was one of trust and confidence giving rise to fiduciary obligations, authority for this proposition is found in *McMullen v. Loan Association*, 64 Kan. 298, 67 Pac. 892. There the secretary of a building and loan association defaulted and an action was instituted on his bond more than six years after default. The petition alleged that the secretary "artfully and fraudulently concealed his misappropriations by making false entries in the books and by failing to make entries in the books of moneys received by him, as well as by making false entries and statements in his written reports of the transactions of his office." (p. 305.) The question was whether the cause of action accrued when the fraud was committed, or when the fraudulent concealment and defaults were discovered. It was held the defendant's fraud and concealment of a cause of action postponed the running of the statute of limitations until such time as the plaintiff discovered the fraud.

While the *McMullen* case has not been overruled, *Graham v. Updegraph*, supra, recognized that the case had been cited a number

of times and distinguished, saying "Indeed, it is doubtful if that case has ever been followed since it was written." (p. 51.) (See, *State, ex rel., v. McKay*, supra.)

Here we think the *McMullen* case has no application because the relationship between a hospital and its patients is not a *fiduciary* relationship. This point was not considered in *Becker v. Porter*, 119 Kan. 626, 240 Pac. 584, where a patient brought an action against a dentist. (See, *Natanson v. Kline*, 186 Kan. 393, 350 P. 2d 1093, [opinion denying a rehearing, 187 Kan. 186, 354 P. 2d 670].) The court simply held the provision of our statute, which provides that an action for relief on the ground of fraud shall not be deemed to have accrued until discovery of the fraud, has no application to an action in tort based upon negligence of the defendant which resulted in personal injury to the plaintiff.

The appellant argues the negligence of the hospital in the instant case was a continuing act of negligence until such time as the decedent was released from the hospital on the 18th day of May, 1956. This date is within two years prior to the filing of the petition.

For this proposition the appellant relies upon malpractice decisions from foreign jurisdictions, and contends the liability of a hospital should be no different. On this point, however, the Kansas malpractice decisions are to the contrary. (*Becker v. Floersch*, 153 Kan. 374, 110 P. 2d 752; and *Coulter v. Sharp*, 145 Kan. 28, 64 P. 2d 564.)

In *Blackburn v. Security Benefit Ass'n*, 149 Kan. 89, 86 P. 2d 536, the plaintiff contended the defendants' tortious wrongdoing was of a continuous nature which lasted until the defendants turned the plaintiff out of the hospital, but the court was not required to specifically pass upon this question because the evidence presented at the trial of the case was insufficient to make a *prima facie* case of negligence against the defendant.

Another case which may be confused with the continuing negligence theory is *Morris v. Dines Mining Co.*, 174 Kan. 216, 256 P. 2d 129. There the plaintiff alleged he was employed by the defendant from July, 1946, to February 20, 1950, in its underground lead and zinc mines where, by reason of the negligent operation of the mines, he inhaled and breathed silica dusts in harmful quantities over such period of time, and that by reason of such inhalations and absorptions, the same varying from day to day, and by reason of the latent, gradual, cumulative and progressive effect thereof, during all that

period of time he was caused to be injured and contracted fibrosis, silicosis and silica-tuberculosis. It was held the theory upon which the petition was drawn indicated the plaintiff contracted the disease in question about February 20, 1950, which was less than two years from the date on which the action was instituted. The *Morris* case tends to fall in the category of *Kitchener v. Williams,* supra.

Our Kansas decisions do not support the appellant's continuing negligence theory on the facts presently before the court.

On count II of the second amended petition the trial court held the gravamen of the appellant's alleged cause of action was in tort, notwithstanding the form in which it was stated, and therefore barred by the two-year statute of limitations.

Basically, count II alleges that pursuant to the admission agreement the hospital agreed to care for the decedent and that his fall from the bed, coupled with concealment from the decedent and his physician the fact that he had fallen, constitutes a breach of the contract. The appellee argues no complaint is made that it failed to furnish care equal to the *express terms* of the contract.

The appellant readily concedes the decisions of *Travis v. Bishoff,* 143 Kan. 283, 54 P. 2d 955, and *Coulter v. Sharp,* supra, hold that notwithstanding the petition by a patient against a surgeon for damages was in form one for breach of contract to perform the operation in accordance with proper surgical practice, the gravamen of the action was malpractice, which is a tort, and the action was barred by the two-year statute of limitations. The appellee interprets this as a concession by the appellant that the Kansas law does not support the appellant's attempt to invoke the three-year statute of limitations to the case at bar. We do not agree.

The theory upon which malpractice actions are held to sound in tort is that the contract, which the patient makes with a physician to perform an operation according to good surgical practice, is nothing more than a duty which the physician is obligated to follow in any event without a contract. In other words, the duties imposed upon a physician by law require him to perform an operation in accordance with good surgical practice. This was stated in *Travis v. Bishoff,* supra, where the patient is said to have suffered the damages which characteristically flow from malpractice. (But see, *Becker v. Porter,* supra.)

The instant case is not an action against a physician for malpractice. We think there is a distinction.

It must be conceded that the acts of the hospital through its agents, servants and employees in permitting the decedent to fall from his bed was an act of negligence, and within the two-year period of the statute of limitations could be instituted as a tort action.

In the early case of *K. P. Rly. Co. v. Kunkel*, 17 Kan. 145, Justice Brewer, speaking for the court, stated:

". . . A second position of counsel is, that the cause of action is not one arising from contract, but is founded upon tort, and that therefore it was barred any way, even if August instead of March was the time of the injury. This claim cannot be sustained. While the distinction between actions on contract and those for tort is plain and broad, yet, as is well said in the case of *Staley v. Jameson*, 46 Ind. 159, on which counsel mainly rely, and in which is quite a full discussion of the question, it is not always easy to determine from the allegations of the petition in which class the action must be placed; for contracts are often alleged in actions which clearly sound in tort, and as often tortious acts and conduct of the defendant are averred in actions purely *ex contractu*. And often the plaintiff has his election upon the same state of facts, whether to bring an action *ex contractu*, or one *ex delicto*. Here the pleader alleges that the defendant was a common carrier, that it made a certain contract of carriage, and received its pay therefor, and then alleges that defendant broke said contract, and how it broke it. True, in showing how defendant broke the contract it discloses wrongful acts done by defendant; but still the manifest gist of the action is the breach of the contract, and the tortious acts are simply the manner of the breach. . . ." (p. 166.)

The foregoing was quoted with approval in *Crabb v. Swindler, Administratrix*, 184 Kan. 501, 337 P. 2d 986, which at page 506 also quoted Pomeroy on Code Remedies, 5th ed., § 464, to which we make reference. (See, also, *Kipp v. Carlson*, 148 Kan. 657, 84 P. 2d 899.)

In the *Crabb* case it was held that when a party binds himself by contract to do a work or peform a service, in the absence of an express agreement, there is an implied agreement or warranty, which the law annexes to the contract, that he will do a workmanlike job and will use reasonable and appropriate care and skill. The court further held that a breach of such implied warranty may result from negligence or failure to use due care and skill in performing the particular work.

Language used by the court in the *Crabb* case indicates that the plaintiff there had an election whether to proceed in tort or contract, but the petition there under attack on demurrer did not disclose which theory the plaintiff had elected. The court said:

"While good practices require the plaintiff's initial pleading to proceed on a single and definite theory, under modern code systems, his pleading may be held sufficient if it states a cause of action on any theory. . . ." p. 504.)

In addition to the cases cited on this point in *Crabb v. Swindler, Administratrix,* supra, see *Fernco, Inc., v. Kennedy,* 181 Kan. 25, 309 P. 2d 400; *Richey v. Darling,* 183 Kan. 642, 331 P. 2d 281; *Kansas Bankers Surety Co. v. Ford County State Bank,* 184 Kan. 529, 338 P. 2d 309, 75 A. L. R. 2d 600; *Dugger v. State Highway Commission,* 185 Kan. 317, 342 P. 2d 186; *Otto v. Swartz,* 186 Kan. 689, 352 P. 2d 12; *Wycoff v. Winona Feed & Grain Co.,* 187 Kan. 98, 353 P. 2d 979; and *Adams v. City of Arkansas City,* 188 Kan. 391, 362 P. 2d 829.

We think it also clear under code practice in Kansas that a plaintiff may plead a cause of action in the alternative where the alternatives are not repugnant. (*Gibbs v. Mikesell,* 183 Kan. 123, 325 P. 2d 359.) In 1 C. J. S., Actions, § 47, pp. 1103, 1104, it is said:

"The same act or transaction may, however, constitute both a breach of contract and a tort, in which case, but subject to the limitation that he cannot recover twice for the same wrong, the injured party may sue either in contract or in tort, as, for example, where the act complained of consists of the violation of some duty merely incident to, or arising out of, a contract."

This court in *Nichols v. Nold,* 174 Kan. 613, 258 P. 2d 317, 38 A. L. R. 2d 887, recognized the right of a plaintiff to plead two causes of action growing out of the same transaction, one in tort and the other in contract for breach of an implied warranty. Reference is made to that opinion for a discussion of many authorities touching the question presently before the court.

It has been held a hospital must exercise toward a patient such reasonable care as his known condition may require, and that degree of care is in proportion to his known physical and mental ailments. Therefore, the extent and character of the duty owed by the hospital will depend on the circumstances of each case. (*Marks v. St. Francis Hospital & School of Nursing,* supra; and *Carlburg v. Wesley Hospital & Nurse Training School,* 182 Kan. 634, 323 P. 2d 638.)

For the violation of such duty in permitting the decedent, while under the influence of sedation and anesthetics, to fall from his bed causing him to sustain injury, an action in tort could be instituted within two years after the injury to recover the consequential damages sustained. But, confronted with these circumstances, the hospital through its agents, servants and employees had an immediate obligation to notify and inform the decedent's physician, and when

the patient had sufficiently recovered from the anesthetics to inform him, of his fall from the bed to fulfill its *implied obligation* under the contract which it had undertaken to perform. The implied contract is simply the fictitious promise which the law infers from the tortious acts themselves.

The very facts which are alleged in the tort action are the facts from which the promise is inferred, and in count II it was necessary to state those facts to allege a cause of action *ex contractu*. They were so alleged, and we hold a cause of action was stated on the theory of contract which is not barred by the statute of limitations.

In an action for breach of an implied obligation under the contract the hospital can be held to account for consequential damages which are the natural, direct and proximate result of the wrongful act. (*Crabb v. Swindler, Administratrix,* supra.)

We therefore hold the trial court properly sustained the demurrer to count I of the second amended petition, but erred in sustaining the demurrer to count II thereof.

The judgment of the trial court sustaining the demurrer to count I of the second amended petition is affirmed, but as to count II thereof it is reversed.