No. 35,062

RUTH L. BECKER, *Appellant*, v. DR. M. A. FLOERSCH, *Appellee*.

(110 P. 2d 752)

Opinion filed March 8, 1941.

*Keene Saxon,* of Topeka, for the appellant.

*J. D. M. Hamilton, Barton E. Griffith* and *Peter F. Caldwell,* all of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment sustaining a demurrer to a petition in which plaintiff sought a recovery of damages for malpractice.

The trial court's ruling was based on the two years' limitation allowed by statute within which an action of that character, sounding in tort, can be maintained. (G. S. 1935, 60-306, 3d clause.)

In her petition, which was filed on November 16, 1939, plaintiff alleged that on January 12, 1935, she was suffering from a tumorous growth in her abdomen and was advised to consult the defendant, who had been highly recommended as a physician and surgeon and as "one who could correctly advise her as to whether or not she needed an operation." Accordingly she and her husband called at defendant's office and made a full disclosure of her physical ailment and asked his advice; and that defendant said he was an X-ray specialist and that he could guarantee to cure the tumorous growth that ailed her in ten X-ray treatments at $10 each, or for $75 in all. Plaintiff alleged that she paid the required amount in installments; and on January 12, 1935, she began taking X-ray treatments in defendant's office and under his direction and so continued until February 18, 1936, by which time she had taken about 90 such treatments; and that thereafter defendant began and continued to

give other types of treatment until May, 1939, at which time she discharged him from further professional services.

Plaintiff also alleged that on February 18, 1936, and "for some three months thereafter" plaintiff took iodine internally as recommended by defendant; that at his special direction and request, between March 6 and May 12, 1936, she had 19 teeth extracted; that about February, 1936, plaintiff began to suffer from a new ailment, which defendant described as rheumatism and treated her therefor; that in February, 1935, plaintiff ceased to menstruate and became sterile—"which this plaintiff has learned since arose from and was caused by the X-ray treatments heretofore mentioned."

Plaintiff also alleged defendant continued to treat the plaintiff until May, 1939, and that ever since she first consulted defendant in January, 1935, until she discharged defendant in 1939, she suffered continuously. Without a specific allegation that such suffering was the result of defendant's malpractice, she alleged—

"That had she been properly and skillfully cared for and treated in the winter and spring of 1938 and 1939 she would have been at least temporarily relieved of pain and possibly permanently cured; that said defendant during the fall and winter of 1938 and spring of 1939 administered to this plaintiff treatments that were wholly unsuited to the malady from which she suffered, but that all of these facts were unknown to plaintiff and concealed by the defendant and something that the plaintiff was not aware of until May, 1939.

"That all of the ninety-odd X-ray treatments given by this defendant to plaintiff lasted thirty minutes to two hours each time and caused great suffering and excruciating pain to the plaintiff which plaintiff was advised by the defendant was a necessary sequel and that she must suffer and endure the suffering in order to gain the relief which she sought; that the plaintiff has learned since that time that the same was unnecessary and that if said treatments had been properly administered she would not have suffered so."

Plaintiff's petition continued:

"Plaintiff further states that after defendant ceased to administer X-ray treatments and approximately in March, 1936, the plaintiff's abdomen became hard in spots and gradually caked all over; the plaintiff began to run a temperature and that the said temperature, caking of the abdominal wall and great pain in the abdomen continued on from March 1, 1936, until November 1, 1936; that thereafter festerous sores began to break out on plaintiff's abdomen and that said sores with 'scabs' over them would be extremely painful at times and at other times not evidencing much pain; that this continued until about the 1st of February, 1937, at which time said sores became more festerous and more painful and that all of this time complained of and at times hereinafter complained of up until May, 1939, this plaintiff was under the constant treatment of the defendant, and although the plaintiff asked the defendant many

times what caused the pain and suffering and what caused her injuries, defendant would decline and continued to decline to advise the plaintiff the cause and nature of her injuries, but told her that he would treat her free of charge. Plaintiff further states that said defendant did continue to treat said plaintiff free of charge up to the time he was discharged in May, 1939."

Recapitulating the grounds of her cause of action, plaintiff alleged that defendant was guilty of negligence in giving her 90 X-ray treatments instead of 10 as he "had promised, advised and agreed," and that defendant—

"Was guilty of willful and wanton negligence in his treatment of this plaintiff by the use of X-ray and subsequent treatments thereafter in the following respects, to wit: that the defendant held himself out to the public as one well versed in the use of X ray as treatment for various bodily ailments and particularly the treatment of tumor, that he claimed to be well qualified and equipped for the performance of such treatment, that he orally stated to this plaintiff in the presence of her husband that in ten treatments of X ray he could cure her of the tumor within her body, that instead of perfecting a cure with ten treatments he applied approximately ninety treatments of from one to two hours in length each, that said treatments caused the bodily injuries complained of in the original petition filed herein; that he used outmoded and antiquated X-ray equipment in the course of these treatments, all of which facts were known to the defendant and wholly unknown to the plaintiff. . . . that [in May, 1939] she learned the true status of her injuries and the true status of the treatments she received and the fact that the care she was receiving from the defendant was not only improper and inadequate but was grossly unsuited as a treatment for this plaintiff and that all of these things were known to the defendant and were within his knowledge and were concealed by him from the plaintiff, and that by virtue thereof, the defendant was guilty of willful and wanton negligence which caused untold suffering and pain to the plaintiff and irreparable loss and damage."

Plaintiff concluded with a prayer for actual and punitive damages.

To this petition counsel for defendant moved to strike certain allegations therefrom and to make other allegations more definite and certain. During the oral argument before the trial court on those motions, defendant was permitted to dictate into the record a demurrer to plaintiff's petition. Thereupon the trial court overruled defendant's motions and sustained the demurrer.

Judgment was entered accordingly, and plaintiff brings the case here for review.

At the inception of his argument, counsel for plaintiff makes this candid statement:

"The plaintiff recognizes that the above two-year statute governs the question in this case and that, as this court has said many times, a 'malpractice' suit is a tort action and this court has swept aside, in suits of this type, the

question of implied or explicit written or oral contractual considerations between patient and doctor. The plaintiff does contend, however, that a malpractice suit is an 'action ex delicto' for the breach of a duty, that is, the duty that one who holds himself out as a highly trained physician and surgeon must properly perform the service which he represents he is able to perform.

. . . . . . . . . . . . . .

"The defendant by his demurrer admits that this plaintiff has been irreparably damaged and has suffered great pain and agony by the acts of malpractice of the defendant, but says that this case should be 'thrown out of court' by the simple expedient of a demurrer, on the theory that, though he admits apparently the X-ray treatments, some ninety in number were wholly unsuited, of long duration, causing terrible and excruciating pain, that since they ended sometime in 1936, and at least prior to May, 1936, and that since this action was not commenced until after May, 1939, the same is barred by the statute of limitations."

Counsel seems to argue that because plaintiff was under defendant's professional care until May, 1939, the two years' time allowed in which to bring this action had not expired—which does not follow. The two years allowed by the statute of limitations in which to bring an action for damages for malpractice begins to run from the time such wrongdoing is committed. So say nearly all the authorities. Counsel himself cites our own familiar cases to this effect. Thus in *Coulter v. Sharp,* 145 Kan. 28, 64 P. 2d 564, it was held:

"In an action for damages the record is examined, and it is held the gravamen of the action is malpractice, which is a tort, to which the two-year statute of limitations applies." (Syl.)

See, also, *Becker v. Porter,* 119 Kan. 626, 240 Pac. 584; *Travis v. Bishoff,* 143 Kan. 283, 54 P. 2d 955; *Graham v. Updegraph,* 144 Kan. 45, 58 P. 2d 475; *Blackburn v. Security Benefit Ass'n,* 149 Kan. 89, 86 P. 2d 536.

In his brief counsel for plaintiff says:

"I feel that the courts should not permit doctors and surgeons to escape the consequences of their negligent acts by the simple expedient of the statute of limitations."

But the zeal of counsel should not carry him so far as to urge this court to intrude on the prerogatives of the legislature:

"We—don't—make—law. We are bound to interpret it as found." (*State v. Lewis,* 19 Kan. 260, 266.)

Another basis for damages argued is that defendant represented himself as a highly skilled physician, surgeon and X-ray specialist. Nowhere in plaintiff's petition, however, does she allege that this

representation was false—if, indeed, it would form a sufficient basis for a cause of action, which need not now be decided.

It is also contended—

"That the defendant either knew of his acts of malpractice and fraudulently concealed them from the plaintiff, over the entire period of time referred to, or if he didn't know, by virtue of his representations of his skill and prowess, he should have known, and in either event he is liable to the plaintiff for the damages she sustained at his hands."

The intimation that defendant "fraudulently concealed" his acts of alleged malpractice is wholly gratuitous. No facts are pleaded which justify such contention.

Clearly plaintiff's action, the allegations of which are merely taken as true for the purposes of considering the demurrer and not otherwise, was barred by the statute of limitations.

The judgment is affirmed.