No. 40,772

Frank J. Cassity, *Appellant,* v. Charles Brady and Russell Frink, *Appellees.*

(321 P. 2d 171)

Opinion filed January 25, 1958.

*Harold E. Doherty,* of Topeka, argued the cause and was on the briefs for appellant.

*Richard A. Barber,* of Lawrence, argued the cause, and *Karl W. Root,* of Atchison, and *Jack C. Maxwell,* of Lawrence, were with him on the briefs for appellee, Charles Brady.

*Richard B. Stevens, John W. Brand,* and *Charles D. Stough,* of Lawrence, were on the briefs for appellee, Russell Frink.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the plaintiff from an order quashing the service of summons had on a nonresident defendant in a malpractice action brought against two doctors, one a resident of Douglas County, where the action was filed, and the other a resident of Atchison County.

The question presented is whether the petition alleges joint liability on the part of the two defendants who treated plaintiff's broken leg.

Ordinarily, a party who is sued in a common law action for damages is entitled to be sued in the county of his residence or where he may be summoned. (*Spade v. VanSickle,* 175 Kan. 557, 265 P. 2d 860.) However, where joint liability of multiple defendants is sufficiently alleged in a petition filed in a county where one of such defendants can be and is served with summons, the issuance and service of summons upon another or other defendants in another county is justified. If the nonresident defendant who has been served with summons in such an action files a motion to quash the service of summons upon him, the question is not whether the alleged joint liability can be established at the trial, but whether or not the petition sufficiently alleges joint liability of such defendants. (*Jones v. Coate,* 177 Kan. 109, 276 P. 2d 329.)

In the instant case, if the petition alleges joint liability of the two defendants, the summons issued and served upon the nonresident defendant in Atchison County is proper—otherwise it is not.

The petition is brief and a full disclosure of the pertinent allegations will serve to indicate the facts and give the precise nature of the pleading under attack. Omitting the caption, the prayer and the allegations which relate to damages, it reads:

"Comes now the plaintiff and for his cause of action against the defendants, plaintiff alleges and states:

"1. That he is a resident of Atchison County, Kansas; that the defendant

Russell Frink is a resident of Lawrence, Douglas County, Kansas; that the defendant Charles Brady is a resident of Atchison, Atchison County, Kansas.

"2. That at all times hereinafter mentioned Russell Frink and Charles Brady were duly licensed to practice medicine and did practice and operate their offices at Lawrence, Kansas and Atchison, Kansas. That *they held themselves out to the public to be experts, properly schooled in the reductions of fractures and dislocations and other diseases of the bones and muscles.*

"3. Plaintiff further alleges that on the *8th day of May, 1955,* while riding a horse near Atchison, Kansas, he was thrown from said horse and received a fracture involving the upper end of the tibia and subluxation at the knee joint. That *subsequent to receiving said injuries he employed the defendants and each of them for the purpose of administering medical aid to him.* That thereafter Charles Brady caused x-rays to be taken·and proceeded to undertake the care and treatment of plaintiff's injuries at the Atchison Hospital, Atchison, Kansas. That even though x-rays taken disclosed that plaintiff's knee was dislocated the defendant Charles Brady neglected and failed to administer treatment to it.

"4. Plaintiff further alleges that on the *13th day of May, 1955, he was transferred from the Atchison Hospital, Atchison, Kansas, to the Lawrence Memorial Hospital,* Lawrence, Kansas, *under the care of Russell Frink who continued to counsel with and advise with the co-defendant Charles Brady in the care and treatment of the plaintiff.*

"5. Plaintiff further alleges that the defendants and *each of them neglected and failed to recognize that his knee joint was dislocated and failed to administer proper care to the knee joint* until plaintiff's knee became permanently injured and stiffened, and plaintiff has lost 50% of the use of his leg.

"6. Plaintiff further alleges that *defendants and each of them were negligent* in the care and treatment administered to the plaintiff in the following particulars, to-wit:

"(a) In failing to observe the true condition of the plaintiff's leg even though x-rays were made and he saw or should have seen by the exercise of ordinary care, the condition of the plaintiff's knee.

"(b) In failing to read the x-rays and study the injuries plaintiff received.

"(c) In failing to administer treatment to said injuries after they were employed by plaintiff and after they had agreed to administer treatment to said injuries.

"(d) In negligently and carelessly failing to observe and treat the dislocation of the knee.

"(e) In permitting the subluxation of the dislocation of the knee to remain untreated, thus causing the stiffening of the knee.

"7. The plaintiff alleges that the defendant *Brady had x-rays taken* and saw the x-rays *and* after they were taken *transferred the same to the defendant Frink who viewed and saw said x-rays and was advised by experts that the x-rays disclosed that the plaintiff's knee was dislocated.*

"8. The plaintiff further alleges that the defendant Brady was negligent in not specifically calling the attention of his co-defendant Frink to the fact that plaintiff's knee was dislocated, which he knew.

"9. Plaintiff further alleges that defendant Frink and defendant Brady

were negligent and their joint negligence was the sole cause of his knee becoming stiffened and his losing the use of his leg." (Emphasis added.)

As far as we are advised, the defendant Frink was properly served with summons in Douglas County and the action is still pending against him. There is no contention that the petition does not state a cause of action against the defendant Frink in Douglas County or that the action against him is not *bona fide.* (See *Voelker v. Broadview Hotel Co.,* 148 Kan. 326, 81 P. 2d 36; *Spade v. Van-Sickle,* supra; and *Volok v. McCarter Truck Line,* 156 Kan. 128, 131 P. 2d 713.) The only question here is whether, under the above allegations, the defendant Brady is jointly liable.

In the construction of a petition for the purpose of determining its effect, allegations are to be liberally construed with a view to substantial justice between the parties. (G. S. 1949, 60-736.) We think it entirely clear that the motion to quash in the instant case challenges the sufficiency of the petition to give jurisdiction to the court over the person of the defendant Brady. Under our code the first ground provided for a demurrer to the petition is that the petition shows on its face ". . . that the court has no jurisdiction of the person of the defendant, . . ." (G. S. 1949, 60-705.) Therefore, the motion to quash, which in substance and effect challenges the sufficiency of the petition, on its face, to give the court jurisdiction of the person of the defendant, may properly be construed as a demurrer to the petition as provided in 60-705, *supra.* (*Volok v. McCarter Truck Line,* supra.) The general rule is that as against a demurrer the petition of the plaintiff is entitled not only to the benefit of the facts pleaded, which must be taken as true, but to all reasonable inferences that may be derived therefrom. (See, *Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 590; and *Hickert v. Wright,* 182 Kan. 100, 319 P. 2d 152.)

An action for damages for malpractice is one in tort, even though there was a contract, or implied contract of employment. (*Foster v. Kopp,* 151 Kan. 650, 100 P. 2d 660.) The rules respecting the liability of physicians in malpractice cases have been frequently stated. Many of them are collected in *James v. Grigsby,* 114 Kan. 627, 220 Pac. 267, where the cases are accumulated. Without further discussion or elaboration on such rules, the reader is referred to pages 631 and 632 in the *James* case.

Liability in tort may flow from joint and concurrent acts of negligence on the part of two or more persons. But in order to

establish liability on the part of all the tortfeasors it must appear that their various acts of negligence combined to produce a result and were together the proximate cause of injury. (*Jones v. Kansas Public Service Co.*, 158 Kan. 367, 147 P. 2d 723; and *Neiswender v. Shawnee County Comm'rs*, 151 Kan. 574, 577, 101 P. 2d 226, and others there cited.) It has been stated that where an injury to an innocent person would not have occurred except for the concurrent negligence of others the subject of proximate cause need not be considered and those whose acts united in producing the injury will be held jointly and severally liable to the injured party. (*Taggart v. Yellow Cab Co. of Wichita*, 156 Kan. 88, 131 P. 2d 924; and *Noel v. Menninger Foundation*, 175 Kan. 751, 267 P. 2d 934.)

Although, in order to be concurrent, the negligence of two persons must be simultaneous, a primary act of negligence may be so continuous in its character that it conjoins with an act of negligence of another committed at a much later date.

In *Acock v. Kansas City Power & Light Co.*, 135 Kan. 389, 10 P. 2d 877, this court said:

".  .  . Here both parties were negligent. While it is true that one succeeded the other in time, they are necessarily related and interwoven, and the death of Acock was the result of the concurrent negligence of both appellants." (p. 398.)

(See, also, the authorities and cases cited therein.)

This court recognized in *Emmerich v. Kansas City Public Service Co.*, 177 Kan. 443, 280 P. 2d 615, that a cause is considered to be concurrent if it was a cause which was operative at the moment of injury and acted contemporaneously with another cause to produce an injury and was an efficient cause in the sense that without it the injury would not have occurred.

For a statement of the rules and a discussion on remote and proximate, or intervening, cause, in negligence cases, see *Hickert v. Wright*, 182 Kan. 100, 319 P. 2d 152; and *Trapp v. Standard Oil Co.*, 176 Kan. 39, 269 P. 2d 469.

The position taken by the defendant Brady is that the petition accused him of an act of omission, which of necessity had to occur during the short period of time that the plaintiff was in his care at Atchison, that is from May 8, 1955, to May 13, 1955. During this period Dr. Frink had not entered the case. It is therefore contended that their respective treatment of the plaintiff did not concur but took place at disconnected places and times. The position

taken is that the alleged acts or omissions of the defendants are neither related nor interwoven in point either of time or place.

The question therefore resolves into this: Are the acts of the defendants as disclosed by the petition so related that they may be considered to be the proximate cause of the plaintiff's injuries or that they might be considered to be concurrent acts?

It is alleged and therefore must be taken as true that plaintiff's leg is stiff because neither of the defendants administered treatment to the knee which was dislocated. Had Dr. Brady set the plaintiff's dislocated knee it would not have been stiff. If Dr. Frink had set the plaintiff's dislocated knee it would not have been stiff. Both of the defendants, who held themselves out to the public to be experts, properly schooled in the reductions of fractures and dislocations and other diseases of the bones and muscles, owed the plaintiff a duty to set this dislocated knee which they omitted, thereby failing in their duty as experts in the treatment of dislocated bones.

If only Dr. Brady had treated the plaintiff and failed to set the dislocated knee, as he did in this case, it would have been stiff. Likewise, because Dr. Frink failed in his duty to set the dislocated knee after he took care of the plaintiff, the plaintiff's leg is stiff.

We cannot say in construing this petition that the employment of Dr. Brady ceased on the 13th day of May, 1955. Construing the entire petition as a whole it states that the plaintiff *was transferred* from the Atchison Hospital, Atchison, Kansas, to the Lawrence Memorial Hospital, Lawrence, Kansas, under the care of Russell Frink who continued to counsel with and advise with the co-defendant, Charles Brady, in the care and treatment of the plaintiff. The omission of the two defendants was so related in point of time and interwoven that the resultant injury to the plaintiff was such that the omission on the part of each continued up until the time or date of the injury. In our opinion, the omission of each of the defendants concurred in producing the resultant injury to the plaintiff.

Although we have been cited to no case precisely in point, a case analogous on the factual situation is *Noel v. Menninger Foundation*, supra, where it was held that the driver of an automobile and the Foundation, which was taking care of an invalid patient, could be joined and sued in the same action, and that their negligence, one of failing to take care of the patient and

the other in running over the patient, were so related and interwoven that they might cooperate and become concurrent causes.

Defendant Brady relies upon *Rose v. Sprague*, 248 Ky. 635, 59 S.W. 2d 554. This is a leading malpractice case in this country where the plaintiff alleged that he engaged the defendants in the counties of their respective residences; where each treated his ailment by virtue of separate and independent engagements; and that their separate treatment afforded him no relief from a wound in the plaintiff's throat. The plaintiff charged each of the defendants with malpractice and endeavored to state a joint cause of action against them in order to give jurisdiction to the Whitley circuit court. The plaintiff alleged that the defendants' separate and successive treatment was not successful, that he was not cured of his ailment, and his injury was caused directly by the concurrent negligence of the several physicians. The Kentucky court held that the plaintiff had no joint cause of action against these physicians, saying:

"The import of these elementary principles is that physicians when engaged and acting independently of each other in diagnosing and treating a patient, during different and distinct periods of time, each is only liable to his patient for his own wrong or negligence, but not for the negligence of the other, even though neither of them effects a cure of the patient's ailment.

"It may be considered in such case that the failure of both physicians to afford relief is concurrent, but such concurrent failure to effect a cure cannot and does not create a joint cause of action against them, simply because neither of them cured the patient, or achieved the result he desired or expected; when he separately engaged and received independent treatment at their hands." (p. 642.)

The distinguishing characteristic of the Kentucky case is the fact that the physicians there were separately engaged by the plaintiff and he received independent treatment at their hands. The court there emphasized that the plaintiff in his petition *unequivocally alleged that his engagement of each of the physicians was independent of the engagement of the other*, and that the diagnosis and treatment by one was not in connection with the others. (But see, *Baird v. National Health Foundation*, 235 Mo. App. 594, 144 S. W. 2d 850). In the instant case the fair import of the petition is that the plaintiff was referred by Dr. Brady to Dr. Frink, another specialist in the same field, and was transferred to Lawrence for that purpose, both continuing as the physicians engaged by the plaintiff to treat his injuries.

We therefore hold plaintiff's petition alleges that both defendants were negligent, and that the negligent omission of the defendant

Brady was so continuous in its character that it conjoined with the negligent omission of the defendant Frink committed at a later date, and was thus necessarily related and interwoven. The injury of the plaintiff was, therefore, the result of the concurrent negligence of both defendants and they were properly joined in the petition which alleged them to be jointly liable. (See, Restatement of Law, Torts, § 439, p. 1184, indexed under Legal Cause—Concurrent Cause, and Comment: (a) and (b) thereunder.) Annotations which bear on the point presented may be found in 9 A. L. R. 939; 35 A. L. R. 409; 91 A. L. R. 759; and note in 46 A. L. R. 1454.

Plaintiff specifies as error the trial court's ruling refusing to direct the defendant Frink to permit the Lawrence Memorial Hospital to release to plaintiff its records concerning his injuries. This was presented in the trial court as a "Motion for Inspection." It was taken under advisement by the trial court pending plaintiff's future action in this case in view of the order quashing service of summons on the defendant Brady. However, upon being pressed by the plaintiff for a ruling, the trial court overruled the motion.

Under the circumstances we are of the opinion that this question is premature. It was discretionary with the trial court to overrule the motion or hold it in abeyance until the issue as to the parties had been finally determined. The plaintiff is free to pursue the statutory procedure for inspection and copy of books and papers (G. S. 1949, 60-2850) or subpoena *duces tecum* (G. S. 1949, 60-2807) at the proper time.

The trial court erred in quashing the service of summons upon the defendant Brady and the judgment is reversed.

PARKER, C. J., and PRICE, J., dissent.