No. 42,352

Marvin D. Noel, *Appellee*, v. G. O. Proud, *Appellant*.

(367 P. 2d 61)

Opinion filed December 9, 1961.

*John J. Alder,* of Kansas City, argued the cause, and *H. S. Roberts,* also of Kansas City, was with him on the briefs for the appellant.

*Stanley L. Lind,* of Kansas City, and *Vincent L. Bogart,* of Wichita, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action against a physician by a patient wherein breach of an express warranty is alleged as the basis for the recovery of damages. Appeal has been duly perfected by the defendant physician from an order of the trial court overruling a demurrer to the amended petition.

The question presented is whether the petition states a good cause of action sounding in contract or one in tort for malpractice. The statute of limitations would bar the latter but not the former.

The petition was filed January 30, 1960, in the district court of Wyandotte County, Kansas. After giving the plaintiff's residence as Sedgwick County and the defendant's residence as Johnson County, the amended petition alleges that the defendant is a duly licensed physician and surgeon under the laws of the State of Kansas

and engaged in the practice of his profession at the University of Kansas Medical Center in Kansas City, Kansas. It then alleges:

"3. That prior to May of the year 1957, plaintiff was suffering from partial loss of hearing in both ears, but was able to hear and understand normal oral communications with either ear.

"4. That sometime during the middle of the month of May, 1957, the exact date being unknown to this plaintiff, plaintiff consulted with the defendant regarding this condition; that defendant examined the plaintiff and informed him that he was a good candidate for an operation known as a 'Stapes Mobilization' operation; that defendant undertook to treat plaintiff and agreed to perform such an operation on the hearing structures of each of plaintiff's ears *and at the same time orally agreed and warranted that while the operations might not have any beneficial effect the plaintiff's hearing would not be worsened as a result of the operations.*

"5. *That in reliance on and in consideration for defendant's promises and warranties plaintiff agreed to accept defendant's services and to pay the reasonable cost therefor;* that plaintiff allowed defendant to perform three of the aforesaid operations on his hearing structures. The first operation was performed by defendant on the hearing structure of plaintiff's right ear on or about June 11, 1957. The second operation was performed by the defendant on the hearing structure of plaintiff's left ear during the month of August, 1957. That approximately ten days thereafter and in accordance with defendant's request, plaintiff returned to defendant for a postoperative examination; that defendant then informed plaintiff that he could do nothing more in the hearing structure of the left ear but that another such operation would be performed on the right ear in January of 1958. The third operation was performed by defendant on the hearing structure of plaintiff's right ear on or about January 6, 1958; that about ten days later and at defendant's request, plaintiff returned to defendant for a postoperative examination and was informed by defendant that nothing more could be done for the hearing structure of plaintiff's right ear.

"6. That at some time during the operation of January 6, 1958, or very shortly thereafter, and as a direct result of said operation, the plaintiff suffered a severe decrease of hearing in his right ear to such an extent that he could no longer distinguish sounds, including oral communications, either with or without the use of artificial hearing aid; that this condition has continued to the present date and will continue for the rest of plaintiff's life.

"7. That during the operation of August, 1957, or very shortly thereafter, and as a direct result of said operation, the plaintiff suffered a severe decrease of hearing in his left ear to approximately fifty percent (50%) of that which he had had prior to said operation and that he could no longer distinguish sounds, including oral communications, without the use of artificial hearing aid; that this condition has continued to the present date and will continue for the rest of plaintiff's life.

"8. That the aforesaid resultant condition constituted a breach by the defendant of the contract entered into between the plaintiff and defendant in May of 1957 as heretofore set out; that plaintiff was not aware of the increased loss of hearing in his left ear until he suffered the complete loss of hearing in his right ear following the operation in January of 1958 and that

upon learning of said condition plaintiff notified defendant in person during the month of January, 1958 and again in either February or March of 1958 by letter; that plaintiff is not sure of the exact date of said letter but that defendant is fully aware of the date upon which receipt was had by the defendant; that these communications constituted notification of the breach of warranty as aforesaid.

"9. That plaintiff has fully paid the defendant for the services rendered plaintiff under and by virtue of the aforesaid contract.

"10. That as a direct result of the breach of contract by the defendant and the resultant loss of hearing in plaintiff's ears, plaintiff has been damaged . . . ." (Emphasis added.)

The demurrer lodged against the amended petition charges that it (*a*) does not state facts sufficient to constitute a cause of action; (*b*) shows on its face that the cause is barred by the statute of limitations; and (*c*) contains a confusion of theories.

It is readily apparent from the foregoing allegations of the amended petition that no allegations of negligence have been made concerning the conduct of the appellant physician. Negligence is an essential element of malpractice, and for a patient to allege a cause of action on the theory of malpractice he must allege a causal connection between the negligent act of the physician and his injury. (*Natanson v. Kline,* 187 Kan. 186, 354 P. 2d 670.) Therefore, the appellee has not stated a cause of action on the theory of malpractice.

We fail to see any confusion of theories set forth in the petition. The cause of action is based on a breach of an express warranty made by the appellant for a consideration and upon which the appellee relied. The appellant contends, however, that irrespective of any express warranties made by a physician to a patient the only cause of action predicated thereon must sound in tort and allege malpractice.

As early as 1870 the Kansas court recognized the general rule that a physician may contract specially for a particular result. In *Erastus Tefft v. Hardin H. Wilcox,* 6 Kan. 46, the law was stated as follows:

"A practicing physician and surgeon is not considered as warranting a cure, unless under a special contract for such purpose. . . . (Syl. ¶ 8.)

It is generally recognized that a physician or surgeon may bind himself by express contract to perform a cure or obtain specific results by treatment or an operation. (41 Am. Jur., Physicians and Surgeons, § 105, p. 220; 70 C. J. S., Physicians and Surgeons, § 37, p. 942; 27 A. L. R. 1235, and supporting cases cited in these works.)

In *Colvin v. Smith* [1949], 92 N. Y. S. 2d 794, 276 App. Div. 9, a physician and surgeon was unsuccessful in his attempt to remove a cataract from the plaintiff's eye. An action based on the alleged breach of a special contract for the removal of the cataract followed. The court said in the opinion:

"A doctor and his patient are at liberty to contract for a particular result, and if that result be not attained, the plaintiff has a cause of action for breach of contract. . . . This cause of action is entirely separate from malpractice, even though they both, as here, may arise out of the same transaction. . . . The two causes of action are dissimilar as to theory, proof and damages recoverable. Malpractice is predicated upon the failure to exercise requisite medical skill and is tortious in nature. The action in contract is based upon a failure to perform a special agreement. Negligence, the basis of the one, is foreign to the other. The damages recoverable in malpractice are for personal injuries, including the pain and suffering which naturally flow from the tortious act. In the contract action they are restricted to the payments made and to the expenditures for nurses and medicines or other damages that flow from the breach thereof. . . ." (p. 795.)

A decision by the New York Court of Appeals to the same effect is *Robins v. Finestone* [1955], 308 N. Y. 543, 127 N. E. 2d 330.

In his brief the appellant relies upon *Travis v. Bishoff*, 143 Kan. 283, 54 P. 2d 955; *Graham v. Updegraph*, 144 Kan. 45, 58 P. 2d 475; *Coulter v. Sharp*, 145 Kan. 28, 64 P. 2d 564; *Foster v. Kopp*, 151 Kan. 650, 100 P. 2d 660; *Becker v. Floersch*, 153 Kan. 374, 110 P. 2d 752; and *Maddox v. Neptune*, 175 Kan. 465, 264 P. 2d 1073, and contends they "spell out the following mandate: (*a*) Substance prevails over form, (*b*) if the allegations reveal a surgeon performs an operation and damage results to the patient, the cause of action, if any, against the surgeon is 'for injury to the rights of another' and (*c*) is governed as to the statute of limitations by Section G. S. 1949, 60-306 3rd (for actions arising in tort), (*d*) even if the action was in form for breach of a contract, and (*e*) whether through breach of contract or tort, the *claim for damages* from such physician is governed by the limitations for malpractice in view of its *ex delicto* (fault) source."

In each of the foregoing cases cited by the appellant recovery of damages was sought upon allegations of negligence which are characteristic of malpractice—acts tortious in nature.

Once the relationship of physician and patient is established by contract, either express or implied, there are *implied in law* certain warranties and obligations by reason of such relationship. As a result rules concerning the liability of physicians in malpractice

cases have become established. These rules have been frequently stated and many of them are collected in *James v. Grigsby*, 114 Kan. 627, 220 Pac. 267, where the cases are accumulated. Without further discussion or elaboration on such rules, the reader is referred to pages 631 and 632 in the *James* case. (See, also, *Goheen v. Graber*, 181 Kan. 107, 309 P. 2d 636.)

To assist in showing the distinction between forms of action which are characteristically in malpractice and those sounding in contract, we shall again resort to a New York case for illuminating language. In discussing the form of action in malpractice, whether fraud, deceit, concealment or contract, the New York Supreme Court in *Calebrese v. Bickley* [1955], 143 N. Y. S. 2d 846, 208 Misc. 407, affirmed as modified 150 N. Y. S. 2d 542, said:

"[4] Most of the difficulty in questions of this character arises from two mutually contradictory conceptions embraced in the labelling of actions. We do not have, except in certain specified instances, forms of action, each with its rigid requisite allegations. We allow recovery if the essentials of recovery are established, regardless of whether the facts conform to any classic category or not. Nevertheless, classifying the avenues of recovery into categories and giving them names is an essential process in any system based on precedent. Without some such method of classification, it would be impossible for the lawyer to advise, the attorney to plead, the legislature to regulate, or the judge to decide. The consequence has been a series of designations, not specifically defined but perfectly well understood and forming part of the arcanum of the legal profession. Not infrequently, the basis of recovery is along the lines of one of the categories, while the object sought would put the case in another.

"[5-9] Actions for malpractice often furnish examples of this situation. *As malpractice covers every way in which a patient is injured through the dereliction of a doctor in his professional capacity, the approach, depending on the facts, can be through any of several familiar forms of action. But no matter what the approach, it remains an action for malpractice, not one for deceit, contract or anything else.* A well recognized ground for recovery is where a physician represents that he has the skill to perform a certain operation when in fact he does not. This form of action requires the same elements of proof that an action in fraud requires, yet it could not be successfully disputed that as between the two it is an action for malpractice. Where, as here, the fraud consists in concealing the malpractice, it has been held that the gravamen is the malpractice and the concealment merely an item in chain of circumstances causing the damage. *Tulloch v. Haselo*, 218 App. Div. 313, 218 N. Y. S. 139." (p. 848.)

For Kansas malpractice cases on concealment see, *McCoy v. Wesley Hospital & Nurse Training School*, 188 Kan. 325, 362 P. 2d 841; and *Graham v. Updegraph*, supra.

The improper performance by a physician or surgeon of the duties imposed upon him by reason of the professional services

undertaken, whether under a contractual relationship with the patient arising out of either an express or implied contract of employment or the obligation imposed by law under a consensual relationship, whereby the patient is injured in body and health for which he seeks damages, is malpractice. It has thus been said an action for damages for malpractice is one in tort, even though there was a contract, or implied contract of employment. (*Cassity v. Brady,* 182 Kan. 381, 321 P. 2d 171.) And it is this situation—attempts to assert what is in substance a cause of action in malpractice as a cause of action in contract to avoid the two-year statute of limitations—to which the above Kansas decisions cited by the appellant were directed and apply. (In *Maddox v. Neptune,* supra, it was an attempt by the physician on demurrer to assert assault and battery alleged in the petition to invoke the one-year statute of limitations.) But these cases have no application to a cause of action *based upon a special contract* between a physician and his patient, or upon an *express warranty* by a physician for which there was consideration given by his patient, as here.

In *Becker v. Floersch,* supra, the petition alleged the defendant said he was an X-ray specialist and that he could guarantee to cure the tumorous growth that ailed the patient in ten X-ray treatments at $10 each, or for $75 in all. But these allegations were not asserted as a special contract in which the physician guaranteed to cure the patient. Concealment and continued treatment by the physician free of charge after the injury were asserted by the patient as grounds for avoiding the two-year statute of limitations.

We think the legal effect of the express warranty here alleged in the amended petition—"while the operations might not have any beneficial effect the plaintiff's hearing would not be worsened as a result of the operations"—is equivalent to a special contract for a particular result. (See, *Frank v. Maliniak* [1931], 249 N. Y. S. 514, 232 App. Div. 278.)

By his amended petition the appellee seeks recovery of payments made for the appellant's services, transportation expenses, and other doctor bills (*Colvin v. Smith,* supra; and *Robins v. Finestone,* supra), among other damages which need not be treated on demurrer to the pleading under attack. (See, *McCoy v. Wesley Hospital & Nurse Training School,* supra; *Hawkins v. McGee* [1929], 84 N. H. 114, 146 At. 641; *McQuaid v. Michou* [1932], 85

N. H. 299, 157 At. 881; and *Challis v. Hartloff*, 136 Kan. 823, 18 P. 2d 199.)

The amended petition herein discloses upon its face the cause of action was not commenced within two years after it accrued, but that it was commenced within three years. G. S. 1949, 60-306, provides in pertinent part:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

. . . . . . . . . . . . . .

"*Second.* Within three years: An action upon contract, not in writing, express or implied; . . .

"*Third.* Within two years: . . . an action for injury to the rights of another, not arising on contract, . . ."

The appellant contends the limitation of the action is not determined by the form of the action, but by its object, and since the action stems from bodily injury to the appellee it is barred by the two-year limitation period. (See, Annotation in 157 A. L. R. 763, 766.) Here again it is asserted the fault source lies in tort. This is in substance a continuation of the argument heretofore made by the appellant which has already been answered.

A case squarely in point has been decided by the Oklahoma Supreme Court which has a statute of limitations identical to the Kansas statute. It was held in *Seanor v. Browne* [1932], 154 Okla. 222, 7 P. 2d 627, 151 A. L. R. 1031, where the plaintiff pleads a special oral contract that the defendant physicians agreed to cure the injury of the plaintiff for a reasonable fee and compensation, and further pleads a failure of the defendant to perfect said cure and pleads the amount paid the defendant for such service, the special contract thus pleaded is governed by the three-year statute of limitations.

Another authority to the same effect is *Robins v. Finestone*, supra. (See, *McCoy v. Wesley Hospital & Nurse Training School.*)

Analogy is to be found in our Kansas food poisoning cases where actions are permitted on an implied warranty and controlled by the three-year statute of limitations on the theory of contract, although the action stems from personal injury caused by eating food which is unfit for human consumption. The measure of damages in these cases is not confined to the price paid for the unwholesome or unfit food, but properly consists of all damages that were foreseen or could reasonably have been foreseen as likely to result from the

particular sale of the food in question. (*Challis v. Hartloff,* supra, and authorities cited therein.)

In conclusion we hold the amended petition states a cause of action sounding in contract and is controlled by the three-year statute of limitations. The judgment of the lower court is affirmed.

PRICE, J., dissenting: Here the physician is alleged to have told the patient—

"that while the operations might not have any beneficial effect the plaintiff's hearing would not be worsened as a result of the operations."

It then is alleged that as a direct result of the operations the patient's hearing was worsened.

In my opinion—looking through form to substance—such allegations amount to nothing more than that the physician either did not know what he was talking about or else was guilty of giving bad medical advice—when he made such statement—and therefore was guilty of negligence amounting to malpractice. Despite the allegations as to "agreements, promises and warranties," it seems to me—looking at this matter from a practical and realistic standpoint —that the real contention in this case is that the patient was the victim of "bad medical advice"—thus rendering the physician guilty of malpractice—in which event the two-year statute of limitations would apply.

I therefore believe the demurrer to the amended petition should have been sustained.

PARKER, C. J., joins in the foregoing dissent.