NOT DESIGNATED FOR PUBLICATION

No. 122,311

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JERRY KEELER,
*Appellant*,

v.

KELLIE PEH,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; FAITH A.J. MAUGHAN, judge. Opinion filed January 29, 2021. Affirmed.

Jerry Keeler, appellant pro se.

*Dawn M. Parsons*, *Gregory P. Forney*, and *Rachael D. Longhofer*, of Shaffer Lombardo Shurin, of Kansas City, Missouri, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Jerry Keeler, acting pro se, appeals the district court's order that dismissed his petition for failing to state a claim on which relief could be granted. Keeler sued Kellie Peh, a nurse who had helped provide dialysis care to Keeler. Keeler's petition alleged that Peh's unwarranted social conduct forced his absence from dialysis care, which eventually led to his hospitalization. But the district court granted Peh's motion to dismiss under K.S.A. 2019 Supp. 60-212(b)(6). On appeal, Keeler complains that the district court acted unfairly and should have found in his favor. But Keeler has failed to preserve his issues or to adequately brief them, so we affirm the district court.

1

*Factual and Procedural History*

Keeler' s petition stated seven claims against Peh:

I.  "Invasion of Privacy:  Public Disclosure of Private Facts,"

II.  "Breach of Confidentiality,"

III.  "Failure to Perform Nursing Duties,"

IV.  "Failure to Properly Address, Document, and Follow-up on a Patient Concern,"

V.  "Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress" from November and December 2018 for failing to perform nursing duties,

VI.  "Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress" from November and December 2018 for yelling at Keeler, and

VII.  "Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress" for failing to perform nursing duties.

*Keeler's factual allegations*

As a stage five kidney failure patient, Keeler received dialysis treatment three days a week at DaVita Dialysis. Peh was one of the nurses that provided Keeler care. Keeler initially found Peh to be excellent, friendly, and considerate.

But, in November 2018, Peh "mysteriously started to change," which concerned Keeler and his wife. They asked Peh if they had upset her, but Peh denied anything was wrong. Other employees would chat with Keeler and care for him, but Peh began to "cut back" on her contact with Keeler and eventually stopped working with him altogether. Peh's withdrawal worried Keeler so much that his blood pressure rose to 200/100. Keeler alleges that Peh knew he "was vulnerable to a stroke or heartattack [*sic*]" because of his high blood pressure. Eventually Keeler started to have small chest pains and headaches.

In late November, Keeler asked Peh to discuss his blood pressure and to tell him why she was no longer helping him. But Peh delayed the conversation for a few weeks and would not talk to Keeler and his wife in private. When they did talk, she only pretended to listen and did not document their conversation. At some point, Peh told Keeler, "'I'M NOT YOUR NURSE' 'YOUR [*sic*] NOT NOT MY PATIENT' 'YOUR [*sic*] NOT MY FRIEND' 'I DON'T HAVE TO TALK TO YOU.'"

Keeler's issues with Peh had not resolved by late December 2018. Peh had stopped speaking to Keeler and his wife, did not wish them a merry Christmas, and ignored them. In contrast, everyone else at the clinic smiled and spoke to Keeler and his wife like they were family. Because Peh's conduct discouraged him from attending, Keeler stopped attending dialysis. As a result, Keeler built up excess fluid, suffered nosebleeds, struggled walking, and became temporarily blind. Eventually he had to be hospitalized and nearly died.

Keeler later wrote a 60-page letter of complaint which his wife personally delivered to Peh. It detailed Peh's actions and how she had "emotionally abused Keeler and made him feel uncomfortable in coming to dialysis." Eventually, Peh's supervisor made her apologize, but Keeler found her apology insincere.

*Keeler filed suit, but the district court dismissed it under K.S.A. 2019 Supp. 60-212(b)(6).*

Keeler then sued Peh. He requested a jury trial, compensatory and punitive damages, and injunctive relief:

- to order Peh to stop her hostility towards Keeler,
- to temporarily ban Peh from nursing duties and any healthcare employment, and

- to order Peh to accompany Keeler to the District Attorney's office to see if she was liable for any criminal charges.

In response, Peh moved to dismiss the petition under K.S.A. 2019 Supp. 60-212(b)(6) for failing to state a claim upon which relief may be granted. Keeler responded, elaborating on his claims.

The district court held a hearing on the motion, but the record does not contain the hearing transcript. The district court granted Peh's motion to dismiss for multiple reasons. The district court dismissed claims III and IV—failure to perform nursing duties and failure to address patient concerns—because Keeler failed to articulate a valid cause of action for negligence. As to claim III, medical malpractice, the district court held:

"Here, Claim III fails to meet the notice pleading standard and does not present a cause of action in a concise and understandable manner. Although Plaintiff concludes Defendant Pe[y] owed him a duty, it is entirely unclear what duty she breached. Plaintiff provides no description of the standard of care of a nurse or how Defendant Pe[y] breached that standard of care. Plaintiff alleges that 'Kellie has stopped doing any form of nursing on plaintiff Keeler.' (Petition, page 7 at ¶ 34.) Nonetheless, Plaintiff also alleges that Defendant Pe[y] 'would leave, the Nursing duties on Keeler. For another R.N. to worry about.' *Id*.

"There is no valid cause of action sounding in negligence that entitled Plaintiff to exclusively have his care at the dialysis clinic performed by Defendant Pe[y] when in fact other nurses were on staff and available to attend to his medical needs. In fact, by Plaintiff's own admission, he was attended to by other nurses on staff. Based on the facts articulated in the Petition, it is evident that care in the dialysis clinic is a team effort and the fact another nurse had to care for Plaintiff as opposed to Defendant Pe[y] fails to state a cause of action for medical malpractice. Relatedly, Plaintiff fails to articulate any cognizable injury that can be causally connected to the fact Defendant Pe[y] did not treat him as opposed to one of the other nurses on staff. Plaintiff does not allege that he was neglected by the rest of the nursing staff or was not provided the dialysis services he was

4

entitled to as a patient of the clinic. Accordingly, this cause of action fails to state a valid claim for medical malpractice and is dismissed."

As to claim IV, the district court held:

"Likewise, Claim IV, titled as a 'negligence' claim, also fails to state a valid claim for relief in a concise and understandable manner. Plaintiff alleges that Defendant Pe[y] failed to properly address, document, and follow-up on a patient concern. (Petition, page 8 at ¶ 37.) Plaintiff alleges that he and his wife asked to speak with Defendant Pe[y] in private about 'private health issues and patient account business.' (Petition, page 8 at ¶ 39.) Plaintiff alleges that talk was not taken seriously, not documented, and was not held in private. (Petition, page 8.) No law exists that supports a valid claim for negligence against a nursing professional for failure to document a patient complaint. Further, even if such a duty exists under the law, Plaintiff's Petition makes clear that he was able to 'file a 60-page complaint to upper management cause Kellie, was not at satisfactory to Keeler and his wife at addressing a concern.' (Petition, page 8 at ¶ 42.) In other words, Plaintiff was fully able to record his complaint and voice it to Defendant Pe[y]'s employer. Any breach by Defendant Pe[y] caused no damages, as Plaintiff was not precluded from voicing his concerns to the Davita East Wichita Dialysis Center. Simply because it was more of a hassle for him to make that complaint to 'upper management' does not state a valid cause of action for negligence. Thus, Count IV is dismissed for failure to state a claim upon which relief may be granted."

The district court also held that claim III, as a medical malpractice claim, barred Keeler's other claims. Following *Kernke v. Menninger Clinic, Inc.*, 172 F. Supp. 2d 1347, 1354 (D. Kan. 2001), and *Noel v. Proud*, 189 Kan. 6, 9, 367 P.2d 61 (1961), the district court dismissed claims I, II, IV, V, VI, and VII because they merely reclassified the medical malpractice claim in claim III.

As an additional reason, the district court dismissed claims V, VI, and VIII, the intentional infliction of emotional distress and negligent infliction of emotional distress claims. It held that Keeler's alleged injury did not meet the high standard to maintain a

negligent infliction of emotional distress action, and Peh's actions were not extreme or outrageous, as is necessary to maintain an intentional infliction of emotional distress action:

> "In this case, it is evident that Plaintiff is attempting to recover for mere hurt feelings as opposed to intentional conduct that rises to the level of extreme or outrageous conduct. Telling a patient that she does not have to talk to him or be his friend may be seen as unkind, but it is not so extreme or outrageous as to permit recovery under the law of IIED. Likewise, [Defendant's] 'failure to perform nursing duties,' is not intentional conduct that can be deemed so extreme or outrageous as warranting an IIED claim when considering Plaintiff received his care from other nurses on the staff. The conduct alleged by Plaintiff falls far short of this exacting standard required by Kansas law."

The district court also found that Keeler failed to allege extreme emotional distress.

Finally, the district court also held that claims I and II (breach of privacy/ confidentiality) failed to state valid claims under Kansas Law. These claims failed because Keeler voluntarily chose to share private information in a public setting and no caselaw supports a claim for inducing a patient to voluntarily share private information in a clinical setting or for breaching confidentiality.

Keeler timely appeals.

*Analysis*

Civil actions in a district court have a certain order which we call civil procedure. And appellate court have rules of procedure as well—appellate procedure. Keeler's claims reveal a misunderstanding of civil procedure and appellate procedure, which are designed to provide fundamental fairness to the parties and a means of achieving reliable results in the courts. While we liberally construe pro se pleadings, giving effect to the

pleading's content rather than the labels and forms used to articulate the defendant's arguments, *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010), we also require pro se litigants to follow the same rules and procedures as attorneys and we cannot give them either an advantage or disadvantage solely because they are proceeding pro se. *Mangiaracina v. Guiterrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986).

*Keeler failed to preserve many issues for appeal.*

First, we address appellate procedure. Generally, the role of the Kansas Court of Appeals is to determine whether any error occurred in the district court or in certain administrative decisions. Our analysis typically follows a three-step process:

> "(1) determining whether the appellate court can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, i.e., whether the error can be deemed harmless." *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012).

We address the first step—determining whether we can or should review the issues Keeler raises on appeal. Under Kansas Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34), an appellant must point to the specific location in the record where he raised the same issue to the district court that he raises on appeal and where the court ruled on that issue. If an issue was not raised in the trial court, it cannot be raised on appeal. *Ruhland v. Elliot*, 302 Kan. 405, 417, 353 P.3d 1124 (2015). In other words, an appellant generally cannot raise an issue for the first time on appeal. The rationale behind this issue preservation rule is simple: a trial court cannot wrongly decide an issue never before it. See *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003). Failure to preserve an issue may be the end of the road.

Yet we recognize several exceptions to this general preservation rule:

7

"'(1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision.'" *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

But even when an exception permits us to review an unpreserved issue, we may choose not to do so. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017).

The party asserting an issue for the first time on appeal must invoke an exception and explain why the issue is properly before the court. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 35) ("If the issue was not raised below, there must be an explanation why the issue is properly before the court."). Our Supreme Court "has continued to reiterate that Rule 6.02(a)(5) means what it says and is ignored at a litigant's own peril." *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020). This peril is the dismissal of the appeal.

Keeler raises many of his issues for the first time on appeal—those issues not dealing specifically with what the district court decided in its order of dismissal. Keeler fails to make a pinpoint reference to the location in the record where he raised the issue in the district court and where the district court ruled on it. See Rule 6.02(a)(5). And the burden falls on Keeler to designate a record sufficient to present his points and establish his claims. See *Friedman v. Kansas State Board of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013).

The record does not show that Keeler raised certain issues in the district court. Because Keeler does not explain why the following issues are properly before this court or argue for an applicable exception, these issues are not properly preserved:

8

- The district court should have allowed discovery;
- the district court should have allowed Keeler to file a motion for summary judgment;
- the district court should not have held a motion to dismiss hearing because the hearing was not a part of the scheduling order;
- the district court did not allow Keeler to cross-examine Peh at the motion to dismiss hearing;
- the district court should have denied Peh's motion to dismiss because Peh did not personally attend the hearing;
- the district court failed to swear Peh in at the motion to dismiss hearing; and
- the district court did not advise Keeler he had a right to counsel under K.S.A. 2019 Supp. 60-31a05(a).

Keeler could have and should have raised these issues first in the district court, either at the hearing on the motion to dismiss, or through a later motion to alter or amend the judgment. See K.S.A. 2019 Supp. 60-259(f). This motion allows a district court an opportunity to correct prior errors. See *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 939, 159 P.3d 215 (2007). Yet Keeler did not make any such motion in the district court or otherwise give the district court a chance to rule on most these procedural issues, so we decline to reach them.

We note, however, that a motion to dismiss under K.S.A. 2019 Supp. 60-212(b)(6) asserts that even if all the facts the plaintiff alleges in the petition are true, no violation of law has been stated. And because it is an early motion in lieu of an answer, no conclusion of discovery, filing of summary judgment motions, scheduling orders, cross-examination, personal attendance, or swearing-in are required or are appropriate at that stage of litigation. And Keeler had no right to counsel under K.S.A. 2019 Supp. 60-31a05(a), which recognizes "the importance of advising parties of their right to assistance of

9

counsel in the context of proceedings for protection from stalking"—Keeler's case is civil, not criminal, and is not a proceeding for protection from stalking. See *Walker v. Brizendine*, No. 114,776, 2016 WL 5012505, at *3 (Kan. App. 2016) (unpublished opinion).

Keeler also raises an issue of judicial bias and unfair action, contending the district court did not review his brief. He alleges that during the hearing the judge took a recess to look over the case, but Keeler saw the judge in the hall, so he knows the judge did not have time to sufficiently consider his case.

Yet we decline to reach this issue as well. First, Keeler's observation of a judge is a factual finding that we cannot make on appeal. See *State v. Estrada-Vital*, 302 Kan. 549, 557, 356 P.3d 1058 (2015) ("[A]ppellate courts do not make factual findings in the first instance; we only review district court findings."). Second, Keeler's attached declaration that all his statements in the brief "are real and true events that occurred at the motion to dismiss hearing" is not a factual finding. See *Haddock v. State*, 282 Kan. 475, 524, 146 P.3d 187 (2006) ("[A]n appendix to an appellate brief is not a substitute for the record on appeal, and material so attached will not be considered by this court."). And third, although we have sometimes reviewed allegations of judicial misconduct even without an objection in the district court when the defendant has claimed a violation of his constitutional rights, see *State v. Kemble*, 291 Kan. 109, 113, 238 P.3d 251 (2010), Keeler does not claim a violation of a constitutional right. Thus Keeler fails to preserve this issue for appeal.

*Keeler fails to properly brief any substantive issue.*

Keeler's failure to raise the issues stated above does not prevent us from considering Keeler's argument that the district court erred in granting Peh's motion to dismiss. That issue is properly raised on appeal.

Still, Keeler has failed to adequately brief this issue. Even if properly preserved, an issue not adequately briefed is considered waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). A point raised incidentally in a brief but not argued is also considered abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017).

For example, under a section titled, "Plaintiff could have died and had injury," Keeler states:

> "[Peh] was given notice, that her actions caused Plaintiff Keeler to be hospitalized, also to miss 30 days of Dialysis. To miss 30 days Keeler could have been dead. [Peh] still did the same exact Conduct that could have Killed Plaintiff Keeler to cause severe emotional distress. Court of appeals must reverse district courts [*sic*] dismissal of claim."

But this is insufficient briefing. Keeler fails to support his point with pertinent authority, such as citing a statute or caselaw, or to show why it is sound despite a lack of supporting authority or in the face of contrary authority. That is like failing to brief the issue. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

Still, for clarity's sake, we will explain why the district court properly granted the motion to dismiss.

*The district court did not err in dismissing Keeler's medical malpractice claims.*

We review the district court's dismissal of a claim or petition de novo, meaning we analyze it anew, independently. We view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, then dismissal was improper. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013).

But the district court does not have to accept one's legal conclusions. See *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 785, 450 P.3d 330 (2019) ("[A] pleading's bare legal conclusions need not be credited absolutely in the same way that the plaintiffs' factual allegations must be when a judge rules on a motion to dismiss.").

We first address the district court's dismissal of count III, Keeler's medical malpractice claim. In his petition, Keeler argues that Peh failed to perform nursing duties on him, and that as a registered nurse at DaVita she had a duty to perform nursing duties on any and all patients if needed. Keeler says Peh breached this duty because she stopped providing him care. And "as a result of [Peh's] failure to perform [n]ursing duties," Keeler "suffered high blood pressure numbers of 200/100," missed treatment, and had to be hospitalized.

Keeler's brief cites no legal authority but refers us to his response to the motion to dismiss where he elaborates on Peh's alleged duty. In that response, Keeler submitted DaVita's mission statement and code of conduct as proof of Peh's duty of care and breach of that duty. Under DaVita's core value "Team," DaVita's mission statement stated, "One for All, and All for One! We work together, sharing a common purpose, a common culture and common goals." And, under "Accountability," it stated, "We don't say, 'It's not my fault,' or 'It's not my job.'" So, Keeler concluded, "under Davita's [*sic*] policy Defendant [Peh] cannot, and should not den[y] to perform nursing duties on plaintiff Keeler."

To establish a medical malpractice claim, a plaintiff must show:

"'(1) the health care provider owed the patient a duty of care, which required that the provider meet or exceed a certain standard of care to protect the patient from injury; (2) the provider breached that duty or deviated from the standard of care; (3) the patient was injured; and (4) the injury proximately resulted from the health care provider's breach of

12

the standard of care.' [Citations omitted.]" *Castleberry v. DeBrot*, 308 Kan. 791, 802, 424 P.3d 495 (2018).

*Keeler fails to allege Peh breached her duty of care.*

Under Kansas law, a health care professional has

"a duty to use the learning and skill ordinarily used by other members of that same field of medicine in the same or similar communities and circumstances. In using this learning and skill, the [health care provider] must also use ordinary care and diligence. A violation of this duty is negligence." PIK Civ. 4th 123.01 (2014 Supp.).

See *Foster ex rel. Foster v. Klaumann*, 296 Kan. 295, 302, 294 P.3d 223 (2013).

One way a plaintiff may prove a breach of a health care professional's duty is by an abandonment theory:

"'It is the settled rule that one who engages a physician or surgeon (the terms "physician" and "surgeon" are here used interchangeably) to treat his case impliedly engages him to attend throughout the illness or until his services are dispensed with. In other words, once initiated, the relationship of physician and patient continues until it is ended by the consent of the parties, revoked by the dismissal of the physician, or until his services are no longer needed. A physician has a right to withdraw from a case, but if he discontinues his services before the need for them is at an end, he is bound first to give due notice to the patient and afford the latter ample opportunity to secure other medical attendance of his own choice. If a physician abandons a case without giving his patient such notice and opportunity to procure the services of another physician, his conduct may subject him to the consequences and liability resulting from abandonment of the case.'" *Collins v. Meeker*, 198 Kan. 390, 402, 424 P.2d 488 (1967).

Keeler's allegations are consistent with an abandonment theory. But Keeler has not shown that this theory, which applies to physicians, may extend to nurses. Yet even if we

13

assume that it may, Keeler's factual allegations, viewed in the light most favorable to him, fail to establish that Peh may have breached this duty. In other words, Keeler fails to show that Peh improperly withdrew her care. Keeler does not show that his dialysis stopped because Peh withdrew. Instead, Keeler admits that other DaVita staff provided his nursing care when Peh did not. So Peh did not abandon Keeler's case without giving him the services of another nurse for his dialysis care. And Keeler does not allege or raise any legal argument that he had a right to exclusive nursing care from Peh, instead of from other nurses. Thus Keeler failed to allege that Peh breached her duty of care. Although Keeler's medical malpractice claim also suffers other fatal pleading errors, such as failing to plead that a breach of duty proximately caused the injuries he alleges, we need not detail those failings here.

*The district court did not err in dismissing Keeler's other claims.*

We also need not individually address the district court's dismissal of claims I, II, IV, V, VI, and VII, although the district court did so correctly and compellingly. In addition to analyzing those claims individually, the district court held that these claims were each included within Keeler's medical malpractice claim.

Under the analysis that the district court relied on, a plaintiff who sues for medical malpractice cannot maintain other claims against the same defendant when those claims arise from the same series of events as the malpractice claim:

> "Under Kansas law, a plaintiff who brings a claim against a doctor or hospital for failure to perform the legal duty to exercise reasonable care, skill and diligence in the treatment of a patient may not also maintain other claims against the doctor or hospital for actions that arise from the same series of events as the underlying malpractice claim. See *Noel v. Proud*, 189 Kan. 6, 367 P.2d 61, 65-66 (1961) (quoting *Calabrese v. Bickley*, 208 Misc. 407, 143 N.Y.S. 2d 846 [N.Y. Supp. 1955]). For instance, although a medical malpractice plaintiff may satisfy all of the essential elements for a claim of fraud against

a doctor, the court will dismiss the fraud claim unless the claim extends 'beyond a breach of the legal duty which every doctor has the obligation to uphold.' *Bonin v. Vannaman*, 261 Kan. 199, 929 P.2d 754 (1996) (citing *Noel*, 367 P.2d at 64, 66). In other words, Kansas courts will not permit a plaintiff to 'creatively classify' a claim as something other than one for medical malpractice if the substance of the claim concerns the physician-patient relationship. See *Christensen v. Gleason*, No. 98-1329-JTM, 2000 WL 133815, at *4 (D. Kan. 2000) (citing *Bonin*, 929 P.2d at 763)." *Kernke v. Menninger Clinic, Inc.*, 172 F. Supp. 2d 1347, 1354 (D. Kan. 2001).

The district court found that Keeler's claims for invasion of privacy, breach of confidentiality, failure to properly handle a patient concern, and negligent and intentional infliction of emotional distress all turned on the same core set of facts as his medical malpractice claims. Each of those additional claims involved Peh's care and treatment of Keeler while he was a patient at the dialysis clinic. The essence of the claims does not extend beyond allegations that Peh breached her duty of care to him while he received dialysis at the clinic. Instead, they simply reclassified his medical malpractice claims as something else. Kansas law does not permit that.

Keeler does not address this analysis in his brief on appeal. Because Keeler fails to brief this issue, we do not revisit it. The district court's analysis is sufficient to warrant dismissal of all claims but Keeler's medical malpractice claim, which we have separately addressed above.

Affirmed.