Joseph Brian KERNKE,
et al., Plaintiffs,

v.

The MENNINGER CLINIC,
INC. et al., Defendants.

No. CIV. A. 00–2263–GTV.

United States District Court,
D. Kansas.

Nov. 14, 2001.

Stephen G. Dickerson, Kugler & Dickerson, Kansas City, KS, Murray E. Abowitz, Kayce L. Gisinger. Abowitz & Rhodes, P.C., Oklahoma City, OK, for Plaintiff.

Marta Fisher Linenberger, Gerald L. Goodell, Wayne T. Stratton, Curtis T. Stratton, Curtis J. Waugh, Goodell, Stratton, Edmonds & Palmer, Thomas E. Wright, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, Larry O'Neal, Scott W. Sayler, Michelle R. Mangrum, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for Defendants.

Harvey L. Kaplan, Karen A. Brady, Patricia Jean Castellano, John F. Kuckelman, Shook, Hardy & Bacon, LLP, Kansas City, MO, for Defendant Aventis Pharmaceutical Inc.

## MEMORANDUM AND ORDER

VanBEBBER, Chief Judge.

Plaintiffs assert various claims against defendants the Menninger Clinic, Inc., Dr. Edward Eaton, Dr. Joyce Davidson and Dr. Patricia Solbach ("Menninger defendants") arising from the death of Kenneth Kernke. Plaintiffs advance claims against each of the Menninger defendants for medical malpractice, intentional infliction of emotional distress, false imprisonment, fraudulent misrepresentation, breach of fiduciary duty and wrongful death. Plaintiffs assert an additional claim against the Menninger Clinic for misrepresentation. The case is before the court on the Menninger defendants' motion for partial summary judgment (Doc. 148) and on the Menninger defendants' motion to strike the affidavit of Nelda Ferguson, Ph.D. (Doc. 195). For the reasons set forth below, the Menninger defendants' motion for summary judgment is granted in part and denied in part and their motion to strike is denied.

## I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on the evidence submitted with the summary judgment papers and viewed in the light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

Kenneth Kernke, the uncle of plaintiff Brian Kernke and the brother of plaintiff Joseph Kernke, lived with his parents in Oklahoma City, Oklahoma for most of his life. In 1988, Kenneth was diagnosed with schizophrenia. Kenneth was hospitalized several times and placed on several different types of anti-psychotic medication after he was initially diagnosed with schizophrenia.

Kenneth Kernke's mother, Blanche Kernke, acted as Kenneth's primary caretaker and held power of attorney for Kenneth's health care until her death in April 1998. Following Blanche's death, Brian Kernke obtained power of attorney over Kenneth and assumed primary responsibility for Kenneth's care. In June 1998, Brian, concerned that he was unable to effectively assist Kenneth with the necessities of daily living, called the Menninger Clinic in Topeka, Kansas to inquire about placing Kenneth in an assisted living program. Shortly thereafter, Kenneth voluntarily admitted himself as an outpatient into Horizon House, the Menninger Clinic's supervised group living arrangement.[1] Kenneth's diagnosis at the time of his admission was "Schizophrenia, paranoid type, chronic." Brian also warned Menninger staff prior to Kenneth's admission that though Kenneth presented no threat of physical harm to others or himself, he was depressed as a result of his mother's death.

Kenneth Kernke's physician at Horizon House was Dr. Joyce Davidson. In August 1998, Dr. Davidson referred Kenneth to Dr. Edward Eaton for potential participation in a clinical study of M100907, a new investigational drug for schizophrenia and schizoaffective disorders manufactured by Hoechst Marion Roussel, Inc., the predecessor of Aventis Pharmaceutical Inc. Dr. Davidson and Dr. Patricia Solbach were the co-principal investigators responsible for conducting the clinical study at the Menninger Clinic, which was one of numerous sites in North America participating in the study. Dr. Eaton was a physician at Hope Unit, the Menninger Clinic's inpatient facility.

After receiving the referral from Dr. Davidson, Dr. Eaton interviewed and re- viewed the clinical study protocol with Kenneth Kernke to ensure that Kenneth understood what he was volunteering for. Ultimately, Dr. Eaton believed that Kenneth qualified for participation in and would benefit from the study. As a result, Kenneth signed a Patient Information and Consent Form agreeing to take part in the study on August 10, 1998. Kenneth reviewed the form with Leslie Malone, the M100907 study coordinator, and four days later, Dr. Solbach signed off on the form as the individual ultimately responsible for the informed consent process. Among other things, the informed consent form warned Kenneth of the potential risks and hazards involved in participating in the study, including the worsening of schizophrenic symptoms, depression, suicidal thoughts and the fact that a previous participant had committed suicide. The informed consent form also warned Kenneth that because M100907 was an investigational drug, there might be risks involved in participating in the study that could not be predicted or anticipated.

On August 11, 1998, Kenneth Kernke voluntarily admitted himself as an inpatient to Hope Unit to participate in the M100907 study. Following a two-week "wash out" period during which Kenneth Kernke's system was cleansed of any previous medications, Kenneth began receiving M100907. Medical records indicate that Kenneth experienced a decline in his condition following his admission into the drug study, including a deepening of his depression, an increase in his psychosis and a worsening of his tardive dyskinesia, a neurological disorder characterized by abnormal voluntary muscle movements. In addition, Kenneth repeatedly informed Menninger staff members and Brian

---

1. Although Brian held power of attorney over Kenneth, the record indicates that he informed the Menninger Clinic that he was not Kenneth's guardian and that Kenneth would sign himself into the clinic.

Kernke that he wanted to return home to Oklahoma City.[2]

At 8:00 a.m. on October 12, 1998, Kenneth Kernke walked away from the Menninger Clinic while on a return trip from the dining hall with a group of patients being escorted and supervised by Earlene Redmond, a Menninger staff member. After discovering that Kenneth had absconded, Redmond immediately informed Menninger Clinic security, who arrived at 8:22 a.m. Security proceeded to search for Kenneth on the Menninger Clinic grounds and in the immediately apparent areas until 9:50 a.m. After the initial search, the Menninger Clinic placed its staff on "be aware status" for Kenneth, which meant that staff was to stay on alert for Kenneth but was not required to actively search for him. The "be aware status" was part of the clinic's protocol for voluntary patients such as Kenneth who had eloped from the property. The Menninger Clinic also notified the local sheriff's department of Kenneth's disappearance, and the sheriff's department came to the clinic at approximately 5:45 p.m. on October 12 to investigate.

On January 16, 1999, Kenneth Kernke was found dead in a wooded area approximately one mile away from the Menninger Clinic. The Shawnee County, Kansas coroner's report indicates that Kenneth probably died from exposure. Kenneth was 52 years old at the time of his death.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party." *Black Hills Aviation,*

---

**2.** As a voluntary patient, Kenneth Kernke was eligible for release from the Menninger Clinic at any time provided that he submitted a written request for discharge. Although the

record indicates that Kenneth made numerous oral requests to return to Oklahoma City, it is devoid of evidence that he ever submitted a written request for discharge.

*Inc. v. United States,* 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

## III. DISCUSSION

### A. Medical Malpractice Claims

In Counts of IV and X of their Second Amended Complaint, plaintiffs advance claims of psychiatric and medical malpractice against each of the Menninger defendants. Specifically, plaintiffs allege that the Menninger defendants breached their duties of care to Kenneth Kernke and that the alleged breaches were the proximate cause of Kenneth's death. The Menninger defendants argue that they are entitled to summary judgment on plaintiffs' malpractice claims because plaintiffs cannot establish that the Menninger defendants breached any duty of care to Kenneth Kernke or that, even if they did, their alleged breaches were the proximate cause of Kenneth's death. The court disagrees and, therefore, denies the Menninger defendants' motion for summary judgment on plaintiffs' medical malpractice claims.

■ To establish a claim for medical malpractice in Kansas, a plaintiff must demonstrate that the defendant owed him a duty, the defendant breached the duty and a causal nexus exists between the duty breached and the plaintiff's injury. *Sharples v. Roberts,* 249 Kan. 286, 816 P.2d 390, 397 (1991) (quoting *Durflinger v. Artiles,* 234 Kan. 484, 673 P.2d 86, 91 (1983)). "Under Kansas law, a physician has a duty to use reasonable and ordinary care and diligence in the diagnosis and treatment of his or her patients, to use his or her best judgment, and to exercise that reasonable degree of learning, skill and experience which is ordinarily possessed by other physicians in the same or similar locations under like circumstances." *Rios v. Bigler,* 847 F.Supp. 1538, 1542 (D.Kan.1994) (citing *Durflinger,* 673 P.2d at 92). "Except where the lack of reasonable care or the existence of proximate cause is apparent to

the average layman from common knowledge or experience, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation." *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 756 P.2d 416, 420 (1988) (citations omitted). A plaintiff's failure to establish these elements against a particular defendant will entitle that defendant to judgment as a matter of law. *Rios,* 847 F.Supp. at 1542 (citing *Mellies v. Nat'l Heritage, Inc.,* 6 Kan.App.2d 910, 636 P.2d 215, 218 (1981)).

■ In this case, plaintiffs contend that each of the Menninger defendants breached their duties of care to Kenneth Kernke by: (1) negligently supervising Kenneth; (2) allowing Kenneth to participate in the M100907 clinical study when he did not meet the protocol criteria for inclusion in the study; (3) failing to secure informed consent from Kenneth or Brian Kernke prior to Kenneth's participation in the M100907 clinical study; (4) misrepresenting to Kenneth and Brian the potential benefits of Kenneth's participation in the M100907 clinical study; (5) failing to properly diagnose and treat several of Kenneth's medical conditions; and (6) failing to establish or follow security measures that would have prevented Kenneth from absconding from the Menninger Clinic in October 1998. According to plaintiffs, these alleged acts of negligence were the proximate cause of Kenneth's death.

The court finds that plaintiffs have offered sufficient evidence through the deposition testimony of their expert witnesses, Drs. Bursztajn and Breggin, to survive summary judgment with respect to each of the Menninger defendants on the issues of both breach of the standard of care and proximate cause. As either the investigators of the M100907 study or as the physicians charged with Kenneth Kernke's care, each of the Menninger defendants owed

Kenneth a duty of care.[3] One if not both of plaintiffs' expert witnesses testified that to a reasonable degree of medical certainty the Menninger defendants did not meet the required standard of care with respect to the six grounds alleged by plaintiffs and that such failure was the proximate cause of Kenneth's death. This evidence is sufficient to create a genuine issue of material fact. Accordingly, the court denies summary judgment to the Menninger defendants on plaintiffs' psychiatric and medical malpractice claims.

The court notes that the Menninger defendants have also argued that under K.S.A. § 40–3403(h), they cannot be held vicariously liable for the negligent acts of one another. The Menninger defendants correctly note that K.S.A. § 40–3403(h) mandates that a health care provider who is qualified under the Kansas health care stabilization fund be absolved of vicarious liability for the negligence of another health care provider covered under the fund. The court cannot address the issue on summary judgment, however, because the Menninger defendants have provided no evidence that any of them are covered under the fund.

## B. Other Claims

### 1. False Imprisonment

In Counts VI and XII of their Second Amended Complaint, plaintiffs advance claims of false imprisonment against the Menninger defendants. The Menninger defendants argue that, among other things, plaintiffs' false imprisonment claims are barred by K.S.A. § 60–514(b), which imposes a one-year statute of limita-

tions on such claims. Plaintiffs concede that their false imprisonment claims are barred by the one-year statute of limitations. Accordingly, the court grants summary judgment to the Menninger defendants on plaintiffs' false imprisonment claims. Because the court grants summary judgment based on the one-year statute of limitations, the court need not address the Menninger defendants' other arguments relating to plaintiffs' false imprisonment claims.

### 2. Intentional Infliction of Emotional Distress, Fraudulent Misrepresentation, Misrepresentation and Breach of Fiduciary Duty

In Counts V, VII, IX, XI, XIII and XIV of their Second Amended Complaint, Plaintiffs advance claims against each of the Menninger defendants for intentional infliction of emotional distress, fraudulent misrepresentation, and breach of fiduciary duty. Plaintiffs also advance a single claim for misrepresentation against the Menninger Clinic in Count VIII of their Second Amended Complaint. The Menninger defendants argue that they are entitled to summary judgment on these claims because plaintiffs are not entitled to bring them separately from their medical malpractice claims. The court agrees and grants summary judgment to each of the Menninger defendants on plaintiffs' claims of intentional infliction of emotional distress, fraudulent misrepresentation, and breach of fiduciary duty, and to the Menninger Clinic on plaintiffs' claim of misrepresentation.

---

**3.** The court notes that Dr. Davidson argues that she cannot be held liable to plaintiffs for any injury to Kenneth Kernke after the time she referred him to Dr. Eaton for the M100907 clinical study because she had no further involvement in his treatment. Similarly, Dr. Solbach argues that she cannot be held liable to plaintiffs for Kenneth's injury because she was not a physician who directly handled Kenneth's care. The court is unpersuaded by Dr. Davidson's and Dr. Solbach's arguments. Specifically, Dr. Davidson and Dr. Solbach were the clinical study's two co-principal investigators and, therefore, owed Kenneth a duty of care throughout his participation in the clinical trial.

■ Under Kansas law, a plaintiff who brings a claim against a doctor or hospital for failure to perform the legal duty to exercise reasonable care, skill and diligence in the treatment of a patient may not also maintain other claims against the doctor or hospital for actions that arise from the same series of events as the underlying malpractice claim. See *Noel v. Proud*, 189 Kan. 6, 367 P.2d 61, 65–66 (1961) (quoting *Calabrese v. Bickley*, 208 Misc. 407, 143 N.Y.S.2d 846 (N.Y.Sup. 1955)). For instance, although a medical malpractice plaintiff may satisfy all of the essential elements for a claim of fraud against a doctor, the court will dismiss the fraud claim unless the claim extends "beyond a breach of the legal duty which every doctor has the obligation to uphold." *Bonin v. Vannaman*, 261 Kan. 199, 929 P.2d 754, 764 (1996) (citing *Noel*, 367 P.2d at 64, 66). In other words, Kansas courts will not permit a plaintiff to "creatively classify" a claim as something other than one for medical malpractice if the substance of the claim concerns the physician-patient relationship. See *Christensen v. Gleason*, No. 98–1329–JTM, 2000 WL 133815, at *4 (D.Kan. Jan.12, 2000) (citing *Bonin*, 929 P.2d at 763).

■ In this case, plaintiffs' claims for intentional infliction of emotional distress, fraudulent misrepresentation, misrepresentation and breach of fiduciary duty turn on the same core set of facts as plaintiffs' medical malpractice claims. In short, each of these additional claims involve the Menninger defendants' care and treatment of Kenneth Kernke while he was a patient at the Menninger Clinic. The essence of the claims simply does not extend beyond allegations that the Menninger defendants breached their duty of care to Kenneth Kernke while he resided at the Menninger Clinic. Because the court finds that plaintiffs' claims against each of the Menninger defendants for intentional infliction of emotional distress, fraudulent misrepresenta-

tion, and breach of fiduciary duty, and plaintiffs' claim against the Menninger Clinic for misrepresentation are simply re-classifications of plaintiffs' medical malpractice claims, the court grants summary judgment to the Menninger defendants on them. Because the court grants summary judgment to the Menninger defendants on this basis, the court need not address the Menninger defendants' other arguments relating to these claims.

## C. Damages

1. Tax Liability Plaintiffs have submitted claims for increased estate tax liability damages they allege were incurred as a result of Kenneth Kernke's disappearance and death. Specifically, plaintiffs argue that the estate of Blanche Kernke, Kenneth's mother, incurred a total of $8,574.00 in increased tax liability when the law firm and accountants handling the estate were forced to file a late estate tax return as a result of Kenneth's disappearance. In addition, plaintiffs argue that Kenneth's estate incurred an additional $185,236.00 in tax liability as a result of Kenneth's allegedly untimely death because his estate did not receive the maximum exemption it would have been entitled to had Kenneth lived until the year 2006. The Menninger defendants argue that plaintiffs' claims for tax liability damages are without merit because: (1) Blanche Kernke's estate is not a party to this action and therefore cannot assert a claim for damages; (2) the damages claimed by Kenneth Kernke's estate are too speculative to be awarded under Kansas law; and (3) Joseph Kernke is not entitled to recover the tax liability damages under the Kansas wrongful death statute because Kenneth expressly disinherited him from his will. The court agrees that plaintiffs' tax liability damage claims must be dismissed and, therefore, grants summary judgment to the Men-

ninger defendants as to those damage claims.

◼ As noted, plaintiffs' first claim for tax liability damages is based upon the increased estate taxes allegedly incurred by Blanche Kernke's estate as a result of Kenneth Kernke's disappearance in October 1998. The Menninger defendants argue that because Blanche's estate is not a party to this action, it cannot make a claim for damages. Plaintiffs do not address the Menninger defendants' argument in their response to the Menninger defendants' motion for summary judgment. Accordingly, the court treats the Menninger defendants' motion for summary judgment as to the claim for Blanche Kernke's increased estate tax liability as uncontested under D. Kan. Rule 7.4 and, therefore, grants summary judgment to the Menninger defendants on that basis. In addition, the court agrees with the substance of the Menninger defendants' argument that plaintiffs have no standing to make a claim for damages on behalf of an estate that is not a party to this action.

◼ Plaintiffs' second claim for tax liability damages is based upon plaintiffs' argument that had Kenneth Kernke lived until the year 2006, his estate would have saved $185,236.00 in taxes from exemptions permitted under the Taxpayer Relief Act of 1997. The Menninger defendants argue that summary judgment must be granted on plaintiffs' claim for these tax damages because the damages are too speculative to be awarded under Kansas law and because Joseph Kernke may not recover such damages given that Kenneth expressly disinherited Joseph from his will. The court agrees that plaintiffs' tax damages are too speculative to be awarded under Kansas law and, therefore, grants summary judgment to the Menninger defendants on that basis.

◼ In Kansas, a plaintiff may not recover damages "where the alleged damages are too conjectural or speculative to form a basis for measurement." *Morris v. Francisco,* 238 Kan. 71, 708 P.2d 498, 503 (1985). Kansas courts have refused to permit the submission of future income tax liability to the jury for consideration in their calculation of damages because, among other things, future tax liability is too conjectural to be considered in fixing damages. See *Rediker v. Chicago, Rock Island & Pac. R.R. Co.,* 1 Kan.App.2d 581, 571 P.2d 70, 76 (1977). Although the Kansas courts have never addressed the precise issue of whether future estate tax liability may be considered in the calculation of damages, other courts that have weighed the issue have determined that it may not. See *Hiatt v. United States,* 910 F.2d 737, 745 (11th Cir.1990); *Farrar v. Brooklyn Union Gas Co.,* 73 N.Y.2d 802, 537 N.Y.S.2d 26, 533 N.E.2d 1055, 1055 (1988). The court is persuaded by the rationale of the Hiatt and Farrar courts and, therefore, holds that plaintiffs cannot recover for estate tax liability incurred as a result of Kenneth's death occurring prior to the year 2006. As noted by the court in Farrar, the recovery of such taxes is dependent upon "the amount and assets of the estate, the decedent's tax status, and the tax law itself" remaining the same. 537 N.Y.S.2d 26, 533 N.E.2d at 1055. As a result, such a claim is inherently speculative and, therefore, not compensable.

As noted, the Menninger defendants also contend that Joseph Kernke may not recover tax liability damages because Kenneth Kernke expressly disinherited Joseph from his will, thereby rendering Joseph unable to recover pecuniary damages under the Kansas wrongful death statute. However, because the court has already determined that plaintiffs' claims for tax liability damages are too speculative to be recoverable, the court need not specifically decide whether Joseph is barred from recovery due to his disinheritance.

## 2. Punitive Damages

 The Menninger defendants argue that plaintiffs have produced insufficient evidence to support their claims for punitive damages against them.[4] The court disagrees and, therefore, denies the Menninger defendants' motion for summary judgment as to plaintiffs' punitive damages claims.

 "In order to recover punitive damages, plaintiff must prove, by clear and convincing evidence in the initial phase of the trial, that defendant acted toward plaintiff with willful conduct, wanton conduct, fraud or malice." *Powell v. Havner*, 817 F.Supp. 90, 93 (D.Kan.1993) (citing K.S.A. § 60–3702(c)). In their response to the Menninger defendants' motion for summary judgment, plaintiffs contend that the Menninger defendants' conduct in this case was wanton. "In order to prove defendant's conduct was wanton, plaintiff must show that the defendant's actions were performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the actions." *Id.* (citations omitted) (applying Kansas law). " 'Wantonness' refers to the mental attitude of the wrongdoer rather than a particular act of negligence." *Gould v. Taco Bell*, 239 Kan. 564, 722 P.2d 511, 518 (1986). A punitive damages claim will survive a motion for summary judgment if a reasonable juror could find that the evidence clearly and convincingly shows that the defendant acted in a wanton matter. *Rios*, 847 F.Supp. at 1548 (citations omitted) (applying Kansas law).

In this case, the court finds that plaintiffs have produced sufficient evidence to survive summary judgment with respect to their punitive damages claims. According-

ly, the court denies summary judgment to the Menninger defendants on plaintiffs' requests for punitive damages in this case.

## D. Motion to Strike Ferguson Affidavit

 Among their exhibits to their response to the Menninger defendants' motion for summary judgment, plaintiffs include an affidavit from Dr. Nelda Ferguson, an Oklahoma City psychologist who evaluated Kenneth Kernke immediately prior to his admission to the Menninger Clinic in June 1998. Dr. Ferguson's affidavit states that based on her personal experience with Kenneth Kernke in June 1998, she does not believe that he was capable of providing informed consent for admission to the M100907 clinical drug study in August 1998. The Menninger defendants move to strike Dr. Ferguson's affidavit, arguing that the affidavit contains information that was not provided in the report Dr. Ferguson completed after her exam of Kenneth in June 1998 or in her deposition in this case.

 The Menninger defendants correctly note that a party may not attempt to create a sham fact issue by introducing an affidavit that is inconsistent with earlier deposition testimony. See *Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir.1995) (citation omitted). In this case, the court does not find that Dr. Ferguson's affidavit is inconsistent with her earlier deposition testimony or with her report. Accordingly, the court denies the Menninger defendants' motion to strike Dr. Ferguson's affidavit.

IT IS, THEREFORE, BY THE COURT ORDERED that the Menninger defendants' motion for partial summary

---

4. Pursuant to this Memorandum and Order, the only claims remaining in this case for which plaintiffs request punitive damages are the medical malpractice claims against the Menninger defendants (Counts IV and X). Plaintiffs have not requested, nor could they receive, punitive damages on the other remaining claim for wrongful death (Count XV).

judgment (Doc. 148) is granted in part and denied in part. The court grants summary judgment on plaintiffs' false imprisonment, intentional infliction of emotional distress, fraudulent misrepresentation, misrepresentation and breach of fiduciary claims and, therefore, dismisses Counts V, VI, VII, VIII, IX, XI, XII, XIII, XIV of plaintiffs' second amended complaint. The court also grants summary judgment to the Menninger defendants on their request to eliminate increased tax liability as an element of plaintiffs' wrongful death damages claim. The court denies summary judgment to the Menninger defendants on plaintiffs' medical malpractice claims (Counts IV and X) and on plaintiffs' claims for punitive damages.

IT IS FURTHER ORDERED that the Menninger defendants' motion to strike the affidavit of Nelda Ferguson (Doc. 195) is denied.

Copies of this order shall be transmitted to counsel of record for the parties.

**IT IS SO ORDERED.**